# SUPREME COURT OF MISSISSIPPI,

—— AT THE ——

# APRIL TERM, 1906.

88
e88

1|
653|

MARCELLUS E. THORNTON ET AL. *v.* CITY OF NATCHEZ.

[41 South. Rep., 498.]

1. DEEDS. *Reverter. Burying place. Condition subsequent.*

Under a deed, made for a valuable consideration, reciting that the land is conveyed to the grantee "for the uses and purposes of a burial place and to be forever kept, used and enclosed in a decent manner and to and for no other use or purpose whatsoever," the title does not revert to the grantor or his heirs upon the failure of the grantee, after many years of such use, to maintain a cemetery on the premises.

2. SAME. *Construction.*

The title to land sold and conveyed for a designated use and no other will not revert to the grantor or to his heirs upon its being put to another and different use, in the absence of express terms in the deed providing for a reversion in such case.

3. SAME. *Equity judisdiction.*

Equity cannot be invoked merely to enforce a forfeiture or to divest an estate for breach of a condition subsequent against a vendee in possession.

4. STATUTE OF LIMITATIONS.   *Code* 1892, § 2747.   *Concealed fraud.*

> A fraudulent concealment of a cause of action, within the meaning of Code 1892, § 2749, creating an exception to the statute of limitations, cannot be predicated of such open and public acts of the defendant as could not have been concealed.

5. RES ADJUDICATA.   *Federal court.   State court.*

> Where several of the complainants had previously sued upon the same cause of action in the federal court and been cast in their suit after a trial upon the merits, they are precluded from afterwards recovering in the state court, although another person, not a party to the federal court suit, joins them as a complainant in the latter suit.

FROM the chancery court of Adams county.

HON. WILLIAM P. S. VENTRESS, Chancellor.

Thornton and wife, citizens of the state of North Carolina, and others, being non-residents of Mississippi, were the complainants in the court below; the city of Natchez was the defendant there.   From a decree sustaining defendant's demurrer to the bill of complaint and dismissing the suit, the complainants appealed to the supreme court.

The suit in the federal court referred to in the opinion is reported, *Thornton et ux.* v. *City of Natchez,* 129 Fed. Rep., 84, and the action of the supreme court of the United States in denying a writ of *certiorari* to the circuit court of appeals, fifth circuit, is reported, *Thornton et al.* v. *City of Natchez,* 197 U. S., 620.

The deed under which the appellants claimed the land sued for, because of an alleged breach of its supposed condition, is in words and figures following, to wit:

"MISSISSIPPI TERRITORY, ADAMS COUNTY.

"This indenture, made the 4th day of January, in the year of our Lord eighteen hundred and seventeen, between William Rutherford and John P. McNeil, merchants of the city of Natchez, in the Mississippi territory, of the first part, and the president and selectmen of the city of Natchez in said terri-

tory, of the other part, *witnesseth:* that the said parties of the
first part, for- and in consideration of the sum of five hundred
dollars to them in hand paid by the parties of the second part,
at or before the sealing and delivery of these presents, the re-
ceipt whereof is hereby acknowledged, and the said parties of
the second part and their successors forever released and dis-
charged therefrom by these presents, have granted, bargained,
sold, released, conveyed, and confirmed, and by these presents
doth grant, bargain, sell, convey, and confirm unto the said
parties of the second part, and their successors forever, all
those lots and parts of lots situated in the said city of Natchez,
being lot number four, and parts of lots numbers one and three,
in square number thirty, as designated on the general plan or
plat of the said city of Natchez, which lots are part of lot
one included in the following boundaries, to wit: Beginning
at the corner of lot number four in said square, at the end of
Main street, thence along Main street to the corner of lot num-
ber two in said square, being the lot on which is the Roman
Catholic burying place; thence at right angles along the line
of lot number two to the southeastern corner thereof; thence
at right angles along the line of the last mentioned lot, belong-
ing to John Henderson, Esq., on which the powder magazine
is erected; thence at right angles through lots one and three
aforesaid to the southeastern side of said square; thence at right
angles along the line of said square to the beginning, together
with all and singular the appurtenances, hereditaments, privi-
leges and advantages whatsoever unto the said described prem-
ises belonging or in any wise appertaining; and also all the
right, title, interest, property, and claim whatsoever, either at
law or in equity, of them, the said parties of the first part, in
or to the same.

"To have and to hold the said lots or parcels of ground and
described premises, with the appurtenances, unto the parties
of the second part, and their successors forever, *for the uses*

*and purposes of a burying place and so to be forever kept, used,
and enclosed, in a decent and substantial manner, and to and
for no other use or purpose whatever.*

"And the said parties of the first part, for themselves, their
heirs, executors, and administrators, do covenant, grant, prom-
ise and agree to and with the said parties of the second part
and their successors to warrant the title to the above mentioned
and described premises, and any and every part thereof with
its appurtenances, unto the said parties of the second part and
their successors, against the said parties of the first part and
their heirs, and against all and any other person or persons
lawfully claiming or endeavoring to claim the same, by, from
or under them, or any of them, and the parties of the first
part shall and will covenant and by these presents bind them-
selves forever to defend the title to said lands.

"In witness whereof the said parties of the first part have
hereunto set their hands and seals the day and year first above
mentioned, January 4, A.D. 1817.

"WILLIAM RUTHERFORD.     [SEAL]

"JNO. P. MCNEIL.     [SEAL]"

Other facts are stated in the opinion of the court.

*Wade R. Young,* for appellants.

If the deed written at that time by one of the most eminent
jurists of the state, without words of inheritance, expressing
in the clearest and most forcible words of which the language
admits the intent of the parties, created an estate in fee simple
absolute, and not a trust, it must be that the legal lore of the
past is at fault, and that we are to have new and different
rules of construction. It is argued that the deed does not create
a trust, because the grantees are not designated as trustees, but
our supreme court has said that no form of words is necessary
to create a trust.

And it is argued that it does not create a condition subse-

quent, because no condition was stated in terms, but the very authorities cited by the United States circuit court of appeals, when the deed was before it, show that technical words of condition are not necessary to create a condition subsequent.

It is argued that there can be no reverter because there is no clause of re-entry, but we have the authority of Chancellor Kent to the effect that a clause of entry is not necessary, and there is no case to be found in the books in which a grant of land as a burying place was ever made with a clause of re-entry, as the very purpose of the grant implies perpetuity.

It is argued also that the deed must be held to have vested an estate in fee simple, because a valuable consideration was paid, but as has been shown, the expressed consideration was only partial, and we have the authority of Fonblanque and the English authorities to the effect that it does not matter that there was a valuable consideration paid, as the uses are held to be correspondent to the consideration.

We are to ascertain the intent of the parties from the provisions of the deed, and in case of ambiguity from the surrounding circumstances, by the known rules of construction, but in no case is the expressed intent to be contradicted or varied.

If the words of limitation are to be construed as creating a covenant rather than a condition, it does not help the case for the defendants. The court cannot compel the city to maintain a burying place which, as stated in the bill, had become an eyesore and a public nuisance, and which might be detrimental to the public health and safety, but in such case the fee reverts to the original proprietors, as the legislature and the board of mayor and aldermen had no power to abolish and prohibit the sole use for which the defendants held the land, in violation of the prohibition of the constitution of the United States, that no state shall pass any law which impairs the obligation of contracts.

Where the absolute fee in lands is acquired by a municipal corporation, although with an expressed intention of using it for a special purpose, the property acquired may be applied by legislative authority to a wholly different public object; but where the grant to the corporation is only for a specified use, the grantor retains the reversionary estate. By the absolute extinguishment of the sole use for which the plaintiffs held this land, the fee reverted to the original proprietors. *Mayor, etc., of Newark* v. *Watson,* 56 N. J. Law, 667 (29 Atl. Rep., 487).

"The grantee of an estate upon condition holds generally in subordination to the right of the grantor to enter for condition broken. Tenure exists between them, and for that reason a mere constructive possession by the grantee, such as accompanies the legal title, ought not to be deemed a denial of the grantor's right to enter. Some act must be done by the grantee which is tantamount to a disavowal of his obligation to perform the condition. *Union Pac. Ry. Co.* v. *Cook,* 98 Fed. Rep., 281."

The court did not say that such disavowal must be brought to the knowledge of the grantor, because in that case it was unnecessary, but if the case of the grantee upon condition comes within the scope of the doctrine, it follows necessarily that a clear, positive and continued disclaimer and assertion of adverse right, to be brought home to the party, are indispensable before foundation can be laid for the operation of the statute.

There is nothing in the law or jurisprudence of this state which conflicts with the doctrine, and all the opinions of this court in such cases have conformed to the doctrine.

In the case of *Davis* v. *Bowmar,* 55 Miss., 765, the court said: "To acquire a title by possession two things must concur, to wit: an occupation, actual or constructive, and a claim

of ownership. Neither is effectual without the other. No continuance of occupation, no matter how long protracted, will avail unless accompanied by claim of title; and every presumption of law is that the occupant holds in subordination, and not adversely to the true owner. Not only does the law presume that he who has entered without title had done so in recognition of and subordination to the title of the owner, but, having affixed this *prima facie* presumption to his entry, it will not allow him to convert it into an adverse one, except by acts which plainly demonstrate its hostile character. Where the entry is shown to be permissive, its origin will give tone and character to all subsequent acts; but where the nature of the entry is unknown, its character may be determined by the subsequent acts, the legal presumption always being in favor of a subordinate entry and holding. It devolves, therefore, upon him who claims that his possession has been adverse, to establish the fact to the satisfaction of the court or jury. This may be done in many ways. Where his occupation has been constructive only, it is usually necessary to show an entry under some documentary muniment or color of title, although it need not be perfect or valid.

But where his occupation has been actual, open and notorious, it may be shown to have been adverse by his acts, or even by his declarations, where these so connect themselves with his possession as to amount to verbal acts. The acts and declarations do not of themselves constitute adverse possession, nor can they change a permissive into a hostile occupancy, but they are evidence of the character of the possession; and if sufficiently decisive, and shown to have been commenced or continued in defiance of the true title, they afford sufficient proof, after the lapse of sufficient time, to establish a title by limitation. What acts will suffice to evince an adverse holding must depend on the circumstances of each case. They must be such as to indicate title rather than tenantry, ownership rather than

dependence." No such adverse holding is shown in this case, and the city of Natchez has no title to the lands in suit. *Daniel* v. *Jackoway*, Freem. (Miss.) Chy., 59·; *Gadberry* v. *Sheppard*, 27 Miss., 203; *Poitevent* v. *Hancock County*, 58 Miss., 810; *Kirkpatrick* v. *Graves*, 51 Miss., 432; *Miller* v. *Tunica County*, 67 Miss., 651 (s.c. 7 South. Rep., 429; *Rowze* v. *Pierce*, 75 Miss., 846 (s.c., 23 South. Rep., 307).

*K. Palmer Lanneau*, and *McWillie & Thompson*, for appellee.

(1) The cause is barred by the statute of limitations, the averments of the bill touching the concealment of the cause of action being wholly insufficient to relieve from the bar.

(2) The original deed from Rutherford and his co-partner to the city of Natchez invested the city with an absolute fee simple title to the land in question, freed from any condition subsequent, or other condition.

(3) *Res adjudicata* is a complete and perfect answer to the suit of all of complainants except one, the federal courts having decided the suit against said complainants, and the supreme court of the United States having refused to disturb the finding.

(1) The city of Natchez ceased to use the lots in controversy as a burying place during the year 1888. This suit was instituted May 30, 1906; the acts complained of had been done and performed by the city more than ten years before the bringing of this suit. The statutes of limitations, Code 1892, §§ 2730, 2731, 2734, 2762, absolutely preclude the further prosecution of this case, unless it be an answer, as claimed, that the bill shows that there was a fraudulent concealment of the cause of action. The averments of the bill are wholly insufficient to make out a case of fraudulent concealment of a cause of action. The bill does not properly charge a concealment of the cause of action; does not state the facts, or anything more than the pleader's conclusions. Nothing is better settled

than that a mere want of knowledge of the existence of a cause of action in a party's favor does not prevent the bar of the statute of limitations. Under the statute upon the subject of concealed frauds, it seems plain that before it can have any application, there must be an existing cause of action, and, in addition, contemporaneously with the coming into existence of the cause of action or afterwards, the party liable thereto must fraudulently conceal the same; it will be noted that § 2749, Code 1892, is broader than the old equity doctrine on the subject.

The averments of the bill are that the city of Natchez disinterred the bodies which had been buried on the land in controversy, concentrated them into one place on the lot, graded down the lot and made a public park of it. These acts in their very nature could not be performed in secret, and could not be concealed. Is it short of nonsense to talk about grading down a lot in a city and converting it into a public park, and at the same time keeping secret what had been done? It is impossible to conceal a cause of action and at the same time erect a monument to the concealment. How could the city of Nathez convert a lot into a public park and conceal the conversion? The authorities bear us out fully in our contention on this point. We respectfully refer the court to Buswell on Limitations and Adverse Possession, sec. 385; 13 Am. & Eng. Ency. Law (1st ed.), 683; *Wood* v. *Carpenter,* 101 U. S., 135.

A party seeking to avoid the bar of the statute on account of a concealed fraud must aver and show that he used due diligence to detect it, and if he had the means of discovery in his power he will be held to have known it. *Nudd* v. *Hamblin,* 8 Allen (Mass.), 130 *Buckner* v. *Calcote,* 28 Miss., 432 (approved, 20 How., U. S., 108); *Wilson* v. *Ivy,* 32 Miss., 233; *Edwards* v. *Gibbs,* 39 Miss., 166; *Fleming* v. *Grafton,* 54 Miss., 79; *State* v. *Furlong,* 60 Miss., 839; *Jones* v. *Rogers,* 85 Miss., 302 (s.c., 38 South. Rep., 742). If there be anything in the trust idea of complainant's counsel, his client's

cause of action predicated thereof is barred by Code 1892, § 2763, just as effectually as any other cause of action could be barred.

(2) The deed from the original William Rutherford and his co-partner to the city of Natchez is not a deed upon condition subsequent, or any other sort of condition. The deed wholly divests the grantors of all interest in or right to the property, and it cannot be construed in any event to reinvest them or their heirs or devises with an interest in the land. We learn from the law books that a condition subsequent is not made in a deed of land for a highway, burying ground or other public use by words such as are used in the conveyance under consideration. *Greene* v. *O'Connor* (R. I.), 19 L. R. A., 262.

If it be doubtful whether a clause in a deed be a covenant or a condition, courts will always lean against the latter construction. 1 Inst., 205b, 219b; 4 Kent Com. (star page), 129 (star page), 132; Shep Touch. (star page), 133; *Merrifield* v. *Cobleigh,* 4 Cush., 178, 184; *Rawson* v. *Uxbridge School District No. Five,* 7 Allen, 125, 127, 128 (83 Am. Dec., 670); *Packard* v. *Ames,* 16 Gray, 327, 329; *Sohier* v. *Trinity Church,* 109 Mass., 1, 19; *Episcopal City Mission* v. *Appleton,* 117 Mass., 326, 329; *Barker* v. *Barrows,* 138 Mass., 578, 580; *Horner* v. *Chicago, M. & St. P. R. Co.,* 38 Wis., 165, 175; *Field* v. *Providence,* 17 R. I., 803; *Stanley* v. *Colt,* 72 U. S. (5 Wall.), 119 (18 L. ed., 502); *Gen.* v. *Southmolton,* 14 Beav., 357; *Atty.-Gen'l* v. *Wax Chandlers Co.,* 42 L. J. Ch., 425.

The Mississippi cases cited by adverse counsel, *Daniel* v. *Joeoway,* Freeman's (Miss.) Chancery Report, 59; *Gadberry* v. *Shepperd,* 27 Miss., 203; *Poitevent* v. *Hancock County,* 58 Miss., 810; *Kirkpatrick* v. *Graves,* 51 Miss., 432; *Miller* v. *Tunica County,* 67 Miss., 651 (s.c., 7 South. Rep., 429); and *Rowze* v. *Pierce,* 75 Miss., 846 (s.c., 23 South. Rep., 307), are either not in point or else support our position.     The

case in Freeman's Chancery Report was exceedingly peculiar
—it has never been approved by the supreme court, and is
questionable; the other cases, in so far as they are at all perti-
nent, are adverse to the contention of appellants' counsel.

The case of *Memphis, etc., R. Co.* v. *Neighbors,* 51 Miss.,
412, not cited by opposing counsel, is more directly in point
than any other Mississippi case, and supports appellee's con-
tention.

The following section from a recent publication entitled
"Cream of Law," January number, 1906, is so very pertinent,
we quote it in full:

"SEC. 62.    DEEDS.—Construction—Conveyance of land to
city 'for city hall purposes only.'    A conveyance of land to a
city having power to purchase and hold real property for its
use, made for a pecuniary consideration and the terms of which
are otherwise absolute, will not be construed as creating an
estate upon condition by reason of a stipulation reciting that
'it is hereby understood that said premises are deeded to said
party of the second part for city hall purposes only.'    *City of
Huron* v. *Wilcox* (S. Dak.), 98 N. W. Rep., 88.    The court
says: 'Forfeitures and conditions subsequent not being favored
in law, a deed will not be construed to create a conditional
estate unless the language used unequivocally indicates an in-
tention upon the part of the grantor to that effect.    The right
is not given to the grantors to re-enter and resume possession
in case the premises are not used for city hall purposes; and the
expression appears to be merely a declaration of the purpose
for which the purchase was made.    Without express words re-
lating to forfeitures or re-entry, no authority has been found
going to the extent of holding a conveyance conditional and
subject to divestment that was executed for a valuable consider-
ation, with covenant or recital that the land conveyed shall not
be used for any other purpose than that specified.    The follow-
ing cases are analogous to the one under consideration, and

illustrate the proposition that clear language is necessary to create either a condition subsequent or precedent, and that words practically identical with those used in the deed before us create a covenant, but are not sufficient to limit or qualify an estate. _Curtis_ v. _Board of Education,_ 43 Kan., 138 (23 Pac. Rep., 98); _Packard_ v. _Ames,_ 16 Gray, 327; _Green_ v. _O'Connor,_ 18 R. I., 56 (25 Atl. Rep., 692; 19 L. R. A., 262); _Soukup_ v. _Topka,_ 54 Minn., 66 (55 N..W. Rep., 824); _Faith_ v. _Bowles,_ 86 Md., 13 (37 Atl. Rep., 711; 63 Am. St. Rep., 489); _Franham_ v. _Thompson,_ 34 Minn., 330 (26 N. W. Rep., 9; 57 Am. Rep., 59); _Weir_ v. _Simmons,_ 55 Wis., 637 (13 N. W. Rep., 873); _City of Portland_ v. _Terwilliger,_ 16 Or., 465 (19 Pac. Rep., 90); _Ecroye_ v. _Coggeshall,_ 21 R. I., 1 (41 Atl. Rep., 260; 79 Am. St. Rep., 741); _Kilpatrick_ v. _Mayor, etc., of Baltimore,_ 81 Md., 179 (31 Atl. Rep., 805; 27 L. R. A., 643; 48 Am. St. Rep., 509); _Carroll County Academy_ v. _Trustees,_ 104 Ky., 621 (47 S. W. Rep., 617); _Incorporated Village of Ashland_ v. _Greiner,_ 58 O. St., 67 (50 N. E. Rep., 99); _Hand_ v. _City of St. Louis,_ 158 Mo., 204 (59 S. W. Rep., 92)."

A municipal corporation cannot buy lands generally, but can buy land for a specific purpose, and can buy it for a cemetery. It seems to us that the municipal authorities of the city of Natchez in the early days of the municipality were undertaking, by the language of the deed, to put upon the records evidence that they were acting within the scope of their authority. The deed simply expresses the intention of the parties at the time that the ground was to be used for a burying place. It was so used for seventy-three years.

The deed was made to a corporation and its successors. This passed a fee simple. The use of the word "heirs" was not essential to convey a fee simple where the grantee could not die and could not have "heirs."

(3) Surely the complainants, except Malcolm McNeil, are

precluded by the judgment of the federal tribunal which they themselves have pleaded. The demurrer is so framed as to authorize the court to sustain it as to those complainants who are clearly so precluded, even though it be overruled as to McNeil.

CALHOON, J., delivered the opinion of the court.

This whole controversy arises out of the proper construction of a deed executed by William Rutherford and John P. McNeil in the year 1,817, which conveyed to the president and selectmen of the city of Natchez a certain lot of land in that city, reciting that the consideration was "for and in consideration of the sum of five hundred dollars to them in hand paid," and then showing that the grantors had "bargained, sold, released, conveyed and confirmed, and by these presents do grant, bargain, sell, convey and confirm unto the said parties of the second part and their successors forever all those lots and parts of lots," describing the property; and then it proceeds under the conveying clause, "and also all the right, title, interest, property and claim whatsoever, either at law or in equity, to them, the said parties of the first part, in or to the same"; and then proceeding, "to have and to hold the said lots or parcels of ground and described premises with the appurtenances to the parties of the second part and their successors forever for the uses and purposes of a burial place, and to be forever kept, used and enclosed in a decent manner, and to and for no other use or purposes whatsoever"; and then proceeds, "and the said parties of the first part, for themselves, their heirs, executors and administrators, do covenant, grant, affirm and agree to and with the said parties of the second part and their successors, that they, said parties of the second part and their successors, the above mentioned and described premises and any part thereof with appurtenances, unto the said parties of the second part and their successors against the said parties of the first part and their heirs, and against all and any other person or

persons lawfully claiming or to claim by, from or under them or any of them, will covenant and by these presents forever defend."

One of the main controversies is, of course, as to whether the use described in the deed to be for a burying place, and for no other use or purpose whatever, is or is not a condition subsequent. The other controversies will be shown further on in this opinion.

The complainants, except one, a new one, appearing first in this new litigation in the state court, filed a bill about the same subject matter and against the same defendants on July 25, 1902, in the circuit court of the United States for the southern district of Mississippi against the city in possession, praying the same relief, which is a decree that the land revert to the complainants, and that defendants be ordered to reconvey and pay rents from the 1st day of January, 1890, or that defendants be perpetually enjoined from using the land for any other purpose than that of a burying place.

To this bill, in the federal court, the defendants demurred: First, because the bill showed no equity. Second, because it shows that one of the grantors died in 1819 and devised all the residue of his estate, real and personal—that is, all of his estate except the land in controversy—to be equally divided between his brother, John Rutherford, and his three sisters named in the bill, but does not show to whom he devised the land in controversy, and the complainants are not shown by the bill to have any interest whatever in the land involved in this suit. Third, that the court is without jurisdiction of the suit, it being practically an action of ejectment for the land. Fourth, that John Rutherford is averred to have died in North Carolina in 1880, testate, and it is not shown that his will has ever been admitted to probate in this state. Fifth, the bill does not show that the interest of John P. McNeil, one of the grantors in the deed, has ever been acquired by the complainants, or either of

them, the assertion in the bill that the complainants are the sole surviving legal representatives of John P. McNeil being a mere statement of the conclusions of the pleader, and that interest is shown to be outstanding, and he is a necessary party, and, if dead, his heirs or devisees are necessary parties. Sixth, said John P. McNeil is shown by the bill to have been the surviving partner of the mercantile firm of William Rutherford & Company, and the land, presumptively partnership assets, and as such became the property of said McNeil as surviving partner, and his interest appears to be outstanding and never acquired by complainants. Seventh, by the terms of the deed the fee passed absolutely to the grantees. Eighth, complainants are barred by laches. Ninth, complainants are barred by the ten years statute of limitation. Tenth, the bill does not show that the cause of action was fraudulently concealed, but does show, in fact, that defendants exercised such public ownership of the land as to make it impossible that complainants with reasonable diligence would not have known of their rights more than ten years before the beginning of this suit. Eleventh, want of knowledge cannot excuse from the bar of limitation, because no fraudulent concealment is shown, the averment on that subject being too vague and indefinite. Twelfth, divers other causes to be shown at the hearing.

This demurrer was argued and taken under advisement by Judge Niles, of the federal court here, and it was decreed as follows:

"It is now ordered, adjudged and decreed that the said demurrer be, and the same is, hereby sustained, and the bill of complaint in this cause is dismissed. Let the defendants go hence and have and recover of and from the complainants the costs of this suit, to be taxed, and for which execution may issue."

The complainants then, in the federal court, took an appeal to the United States circuit court of appeals and assigned as

error: 1. The court erred in its conclusion that complainants had full and complete and adequate remedy at law, and that equity was without jurisdiction. 2. That the court erred in its conclusion that the claim was barred by the statute of limitation. 3. That the court erred in its conclusion that the deed conveyed a fee simple title without condition or reservation. 4. That the court erred in sustaining the demurrer to the bill of complaint.

On this appeal the United States circuit court of appeals decreed an affirmance and delivered an opinion through Justice Parlange, which opinion appears in the record, and also appears reported in 129 Fed. Rep., pp. 86, 87, and is as follows:

"We are satisfied, after full consideration of the matter, that the grant was not made on condition subsequent. Such a condition is not favored in law. 4 Kent's Com., marg. p. 129. Even when a provision is stated in terms to be a condition, a court will determine for itself, not from the statement alone, but from the whole deed or grant, whether a condition was really intended. In this case no condition was stated in terms. A consideration of $500 was paid the grantors, and the grant was not made purely and exclusively from motives of charity or benevolence. No provision whatever was made for re-entry by, or reversion to, the grantors or their heirs or legal representatives. The land was maintained as a public burying place for nearly three-quarters of a century. There is nothing averred in the bill from which we could gather that the grantors intended that the land should be maintained as a public burying place literally in perpetuity, and without regard to the necessities and welfare of all the generations which were to follow. In the absence of any declaration of such an intention, and of anything in the grant from which it could be reasonably inferred, we are to conclude that the grantors meant that the land should be used for the purpose for which they desired

it to be used as long as it was right and proper to do so, in view of the nature of the grant and of its purposes.

"But, in any event, it is beyond question that the grantors made no record of any intention on their part, either expressed or intimated, that the land should ever under any circumstances revert to them or to their representatives. The appellants have not stated a case entitling them to the reversion. They have not even shown that they have an interest or a right in the further carrying out of the purposes of the grant.

"The matter in hand was carefully considered in the able opinion in *Rawson* v. *Inhabitants of School District No. Five in Uxbridge,* 89 Mass., 125 (83 Am. Dec., 670). Also see *Greene* v. *O'Connor* (R. I.), 25 Atl. Rep., 692; 19 L. R. A., 262 (see notes); *Sohier* v. *Trinity Church,* 109 Mass., 1-19; *Episcopal City Mission* v. *Appleton,* 117 Mass., 326; *Barker et al.* v. *Barrows,* 138 Mass., 578; *Stanley* v. *Colt,* 5 Wall., 119 (18 L. ed., 502).

"We are furthermore fully satisfied, after consideration of the statute of limitation of Mississippi, that the appellants have by their laches debarred themselves from prosecuting this action. The conversion of a public burying ground into a public park, and the other acts which the appellants averred in support of the fraud and concealment alleged by them, could not but have been open, public and notorious. Concealment of those acts would have been impossible. The bill, it is true, avers that the appellants had neither notice nor knowledge. But such an allegation, in a matter like the one in hand, is a mere conclusion of the pleader, not binding on demurrer, unless facts are stated from which the court can determine for itself whether the conclusion was correctly drawn. See *Wood* v. *Carpenter,* 101 U. S., 135-140 (25 L. ed., 807).

"The acts complained of took place in the year 1890. Either the appellants knew of those acts prior to the year 1901, or else they could have had the knowledge by exercising reasonable

diligence.    The appellants, having allowed such a lapse of time
to occur before bringing their action, cannot be heard to com-
plain at this late hour.    In view of the statutes of limitations
of Mississippi, we do not understand that the appellants' coun-
sel contends that the appellants were entitled to actual notice.
But see *Elder* v. *McClaskey et al.,* 70 Fed. Rep., 529 (17 C.
C. A., 251).

"There are other matters averred in the demurrer which have
much force, but we deem it sufficient to rest our affirmance of
the decree appealed from on the two grounds stated."

After this opinion and affirmance, the complainants sought
*certiorari* from the supreme court of the United States, which
denied it without an opinion.    So, in the federal court, the
complainants there were solemnly adjudicated to have no rights
on a bill on which they stood without any application to amend.
As to these that adjudication is conclusive in all forums.    It
is conclusive as to all things they pleaded or could have pleaded.
24 Am. & Eng. Ency. Law (2d ed.), 714; *Phillips* v. *Worm-
ley,* 58 Miss., 398; *Straw* v. *I. C. R. R. Co.,* 73 Miss., 446
(18 South. Rep., 847) ; *Weatherby* v. *Pearl River Lumber Co.,
post,* 41 South. Rep., 65 ; *Smedes* v. *Isley,* 68 Miss., 590 (10
South. Rep., 75) ; *Davis* v. *Hart,* 66 Miss., 642 (6 South. Rep.,
318) ; *Perry* v. *Lewis,* 49 Miss., 443; *Lorance* v. *Platt,* 67
Miss., 183 (6 South. Rep., 772) ; *Bell* v. *Medford,* 57 Miss.,
31; *Chiles* v. *Champenois,* 69 Miss., 603 (13 South. Rep.,
840).

After the proceedings stated in the federal courts had ended,
this bill was filed in the state court to accomplish the same pur-
pose, with one new complainant introduced.    It sets up nothing
which was not or could not have been set up in the federal
court, and so, as to the old complainants, as we have said, the
adjudication in that forum is conclusive.

This new bill is demurred to on the same grounds as was the
old one, with the additional one that the bill shows at large

upon its face the proceedings in the federal courts, and they show *res adjudicata* as to those complainants who were such in the federal court suit.

The deed before us is clearly based on a valuable consideration. In its conveying clause it grants the fee in the land, and the concluding clause is a covenant of general warranty. Equity cannot be invoked merely to enforce a forfeiture or to divest an estate for breach of a subsequent condition against a vendee in possession. It abhors forfeitures and looks with hostility on conditions subsequent. To give the right of reverter through the courts it should be expressed in the instrument that, by devotion of the land to a purpose other than that indicated, the whole estate should revert to the grantor and his heirs. "The words in the deed are quite as consistent with an intent to repose a trust and confidence  *  *  *  as they are with an intent to impose a condition which should compel, on pain of forfeiture, to maintain the premises as a burial place for all time." 7 Allen, 125.

In support of the foregoing propositions, see *M. & C. R. R. Co.* v. *Neighbors,* 51 Miss., 413; *Cross* v. *Carson,* 44 Am. Dec., 742 and notes; *Rawson* v. *School,* 83 Am. Dec., 671 and notes; *Packard* v. *Ames,* 16 Gray, 327; *Rankin, etc., Church* v. *Edwards,* 204 Pa. St., 216 (53 Atl. Rep., 770); *Davis* v. *Jernigan* (Ark.), 76 S. W. Rep., 554; *City* v. *Wilcox* (S. D.), 98 N. W. Rep., 88; *Carroll* v. *Trustees* (Ky.), 47 S. W. Rep., 617; 13 Cyc., 683 and notes; *Coburn* v. *Coxeter,* 51 N. H., 158; *Barker* v. *Barrows,* 138 Mass., 578; *R. R. Co.* v. *Ragsdale,* 54 Miss., 200; *Miller* v. *Tunica,* 67 Miss., 651 (7 South. Rep., 429); *V. & M. R. R. Co.* v. *Ragsdale,* 54 Miss., 209.

Of them, cases will be found covering every postulate stated. We do not stop to classify them.

It is also plainly deducible from these authorities that the most that can be claimed here, if that can be claimed, is to hold the city to an implied covenant to use the land forever

for burial purposes only. We do not hold that this may be done, but we do hold that equity has nothing to do with this, and that such a claim must be, if anywhere, at law, and seasonably urged. We think the present proceeding barred by the ten years statute of limitations. We cannot approve the idea that these non-residents are in any better shape than if they lived in the city of Natchez. The action of the municipal legislature was open, notorious, flagrant, adverse and continuous in the hostile claim. It cannot be contended that the board was guilty of any "concealed fraud" under Code, § 2731. Concealment of what was done here was plainly impossible. If we could imagine a "concealed fraud," then, clearly, under the same section, it, "with reasonable diligence, might have been first known or discovered" before the statute began to run. Under this sec. 2731 and secs. 2749-2762 we hold the bar complete. *Barker* v. *Barrows,* 138 Mass., 578; *Elder* v. *McClaskey,* 70 Fed. Rep., 529 (17 C. C. A., 251).

The city in this record is not in the category of a trustee of an express trust, even if such could save the bar of the statute on the facts averred. We decide none of the other grounds of demurrer.

*Affirmed.*