MISSISSIPPI STATE HIGHWAY COMMISSION v. YELLOW CREEK DRAINAGE DIST.

(Division B. May 2, 1938. Suggestion of Error Overruled May 30, 1938.)

[180 So. 749. No. 33186.]

**E. R. Holmes, Jr.,** Assistant Attorney-General, and **Chester L. Sumners,** of Corinth, for appellant.

Ely B. Mitchell, of Corinth, for appellee.

Argued orally by **E. R. Holmes, Jr.,** and **C. L. Sumners,** for appellant, and by **Ely B. Mitchell,** for appellee.

**Anderson, J.,** delivered the opinion of the court.

The Mississippi State Highway Commission filed its bill in the chancery court of Tishomingo County against the commissioners of the Yellow Creek Drainage District to restrain the latter from destroying or interfering with a bridge being constructed by the Highway Commission on public highway No. 72 across Walker Canal, a part of the drainage system of the Yellow Creek Drainage District. A temporary injunction was granted. The drainage district answered and made its answer a cross-bill, in which it sought to enjoin the Highway Commission from proceeding further in the construction of said bridge as planned, and commanding it to remove the piers that had been placed in the canal. There was a hearing on the motion of the drainage commissioners to dissolve the injunction, resulting in a decree sustaining the motion and granting the commissioners of the drainage district an injunction as prayed for in their cross-bill. From that decree the Highway Commission prosecutes this appeal.

The original bill averred that the Highway Commission is an arm of the state government carrying out governmental functions—the construction of a comprehensive system of public highways in the state; that the Yellow Creek Drainage District is also a branch of the state government engaged in governmental functions, to wit, the construction of a system of drainage canals in Alcorn and Tishomingo Counties for the purposes of reclaiming swamp and overflowed lands for cultivation and to promote the public health; that the bridge involved was a part of state highway No. 72, crossing the drainage system; that the new bridge was being constructed at practically the same place as the old bridge across the canal; that it was being properly constructed with the view of

causing no more obstruction in the canal than existed theretofore; that the drainage commissioners were threatening to remove the piers and would do so if not restrained therefrom, and prayed that the drainage commissioners, their servants and employees, be restrained from doing any act which would impede or hinder the progress of the work or destroy any part already constructed.

The drainage district, in its answer and cross-bill, denied the allegations of the original bill in so far as it alleged that the bridge was being properly constructed and with the view of causing no more obstruction in the canal than existed theretofore, and alleged that the Yellow Creek Drainage District was organized in 1921 by the chancery court of Tishomingo County under chapter 39 of the Code of 1906, section 1682 et seq., and amendments thereto; that there were three creeks in the district—Walker, Yellow and Depoyster; that in canaling these creeks it acquired as right of way forty-one feet of land on each side of the center of the line of the canal; that several months before the Highway Commission began the construction of the bridge in question the drainage commissioners gave the Highway Commission notice by resolution that it owned this right of way and not to trespass upon it; that the Highway Commission later acknowledged, through its engineer French, the receipt of this resolution; that the Highway Commission thereupon forwarded to the drainage commissioners a deed to be executed by the latter to the former conveying a right of way across the right of way of the district for the purpose of the construction of bridges; that the drainage commissioners declined to execute the deed for fear of losing jurisdiction and authority over its right of way, but agreed to give the Highway Commission easements over its right of way, provided it would not place piers within the canal, and that the bridges would be built so that the water would have a free passage thereunder; the drainage commissioners embodied the agree-

ment in a writing which was duly executed and forwarded to the Highway Commission; that the latter refused to execute it; that soon thereafter the local engineer of the Highway Commission brought to the office of the drainage district blueprints of the various bridges to be built in Tishomingo County, which blueprints showed that no piling was to be placed in any of the canals in that county; that he assured the drainage commissioners that such blueprints represented the facts; that, contrary to this representation and understanding, in constructing the bridge in question (which was not yet completed) the piling was driven in the ground across the bottom or lowest level of the stream at an angle of 45 degrees; that there were four of such piers, and in addition they had braces across them; that the piling so placed would obstruct the free passage of the water under the bridge, cause drifts to accumulate, dam up the waters and impound them on the lands of the landowners of the district, which would be permanently injured thereby; that the Highway Commission could lengthen the distance of the spans between the piers without placing any piers in the canal and with very little additional cost, which, if done, would not interfere with the free flow of the waters of the canal.

The evidence was ample to sustain the allegations of the answer and cross-bill. The old bridge torn away by the Highway Commission had no piling in the bottom of the canal, only one on each side in the edge. The Highway Commission constructed two other bridges in the district across the canal, the piers of neither of them were placed in the bottom of the canal. Several months before work was begun on the bridge in question the drainage commissioners used every means in their power to get an agreement from the Highway Commission not to place piling within the canal, and finally the local engineer of the Highway Commission presented to the drainage commissioners for their inspection the plans for the bridge, which showed that no piling was to be

placed in the canal. When the piers were being placed there, the drainage commissioners threatened to destroy them with dynamite; the result was the original bill and an injunction restraining them from so doing. Manifestly that injunction was properly issued, for the drainage commissioners had no right to take the law in their own hands.

The chancellor in his decree found the following facts: "That the Highway Department is now constructing a bridge across said canal in said quarter section of land at practically the same place the old bridge was built, but that the Highway Department in building said bridge has constructed the bridge so as to place one bent of four piling at an angle of about 45 degrees across the channel of the canal with brace planks nailed on either side so as to obstruct the free passage of water in said canal, and that the same if allowed to remain in the said canal as now constructed will collect drifts and damage the agricultural lands of said district; that said bridge can be constructed at practically the same cost without putting any piers in the canal." There was sufficient evidence to support such a finding.

In rendering the decree on those facts, did the chancellor apply the correct principles of law? We think this question must be answered in the affirmative. Under the Code chapter on highways, chapter 122, section 4989 et seq., as amended Code 1930, the Highway Commission is given the power of acquiring rights of way for its roads and bridges by eminent domain, and, in addition, it is an agency of the state government. State Highway Comm. v. Gully, State Tax Collector, 167 Miss. 631, 145 So. 351; State Highway Comm. v. Knight, 170 Miss. 60, 154 So. 263. The drainage district chapter of the Code of 1930, chapter 107, section 4371 et seq., which embodies, with amendments, the law under which the Yellow Creek Drainage District was organized, confers the power of eminent domain for the purpose of acquiring rights of way. Such districts are political subdivisions of the state

organized to promote public health as well as for the reclamation of overflowed lands for cultivation. Standard Oil Co. v. National Surety Co., 143 Miss. 841, 107 So. 559; Tallahatchie Drainage District v. Yocona-Tallahatchie Drainage District, 148 Miss. 182, 114 So. 264.

We have here, therefore, both the Highway Commission and the drainage district engaged in public functions under the law—what were their respective rights and obligations with reference to this crossing? In the absence of some statute expressly forbidding it, property devoted to one public use may be taken for another public use where the taking will not materially impair or interfere with, or is not inconsistent with, the existing uses and not detrimental to the public interest. It is not material that some inconvenience may result to the prior occupant if the conditions are such that the two uses can stand together. "The rule that power must be conferred expressly or by necessary implication applies only where the second use will destroy or injure the use to which the land was originally appropriated." 20 C. J. 605, section 91; Canton v. Canton Cotton Warehouse Co., 84 Miss. 268, 36 So. 266, 65 L. R. A. 561, 105 Am. St. Rep. 428; Washington County v. Levee Com'rs, 171 Miss. 80, 156 So. 872; City of Greenwood v. Gwin, 153 Miss. 517, 121 So. 160, 163. In the Gwin Case the court used this language: "Property already devoted to public use may be again taken or damaged for public use." We have here, under the evidence and the chancellor's finding of facts, a crossing capable of both public uses without material damage to either, provided no piers to the bridge were placed in the bottom of the canal, which construction was not only practical but would not cost substantially more than that undertaken.

Affirmed.