CITY COUNCIL OF GREENVILLE AND MISSISSIPPI POWER & LIGHT COMPANY *v.* THOMAS et al.

No. 41898 June 12, 1961 131 So. 2d 659

*Bogen, Wilkes & McGough,* Greenville, for appellant, City Council of Greenville.

*Green, Green & Cheney, Byrd, Wise & Smith*, Jackson; *Farish, Keady & Campbell*, Greenville, for appellant, Mississippi Power & Light Company.

*Wroten, Orlansky & Miller, J. Robertshaw,* Greenville, for appellees.

McGehee, C. J.

On January 21, 1910, the City of Greenville for a recited cash consideration of $4,950 acquired from the Delta Fair Association a deed of conveyance for 13.2 acres of land, and which deed contained a certain provision, the pertinent part of which is that the grantee was to hold, maintain and keep open the land for the purpose of a park. For several years and prior to 1950 the land has been known as the Greenway Park. The appellees, S. B. Thomas and others, own residential properties in the City of Greenville which abut the north side of the said park.

The special charter of the City of Greenville, which was evidently granted prior to the happenings hereinafter mentioned, provides in Section 17, subparagraph 8 thereof, that the city shall have power among other things; ''To grant to any person or corporation the use of the streets, alleys and public grounds for the use of laying * * * conduits for electric power * * * wires to

be used in furnishing or supplying the city and inhabitants or any person or corporation with * * * lights.''

In other words, at the time the 13.2 acres of land was deeded to the City of Greenville, the grantee's special charter contained the above quoted provision. This was before the appellees acquired their residential properties which abut the north side of the said park.

At sometime prior to the year 1950 the appellant Mississippi Power & Light Company, which the consent of the appellant City Council of Greenville, began to use the north 30 feet of the Greenway Park as an easement for erecting and maintaining its power lines across the land. On June 20, 1950, the City Council of Greenville granted unto the Mississippi Power and Light Company an easement for the erection of transmission lines and towers across the north 100 feet of said park land. Thereupon the said Mississippi Power & Light Company entered upon the north 100 feet of said park and erected 50-foot steel towers and electrical transmission lines thereon.

Section 2778, Code of 1942, the source of which is Chapter 233, Laws of 1926, provides as follows: ''All companies or associations of persons incorporated or organized for such purposes are authorized and empowered to erect, place and maintain their posts, wires and conductors along and across any of the public highways, streets or waters and along and across all turnpikes, railroads and canals, and also through any of the public lands; but the same shall be so constructed and placed as not to be dangerous to persons or property; nor interfere with the common use of such roads, streets, or waters; nor with the use of the wires of other wire-using companies; or more than is necessary with the convenience of any landowner.''

Section 2780, Code of 1942, provides, among other things, that: ''All companies, associations of persons, municipalities, associations of municipalities, or natural

gas districts, incorporated or organized for the purpose of building or constructing pipelines and appliances for the conveying and distribution of oil or gas or for the purpose of constructing, maintaining and operating lines for transmitting electricity for lighting, heating and power purposes, are hereby empowered to exercise the right of eminent domain in the manner now provided by law, and to build and construct the said pipelines and appliances along and across highways, *.* *, and public lands, above or below grounds, but not in a manner to be dangerous to persons or property, nor to interfere with the common use of such roads, * * *, and public lands.''

Section 3374-120, Code of. 1942 Rec., provides, among other things, the following: ''The governing authorities of municipalities shall have the power to grant to any person, corporation, or association, on such terms and conditions as the governing authorities may prescribe, the use of the streets, alleys and other public grounds for the purpose of laying, constructing, repairing and maintaining gas, water, sewer, or steam pipes or conduits for electric light, telegraph and telephone lines, and pipe lines for the purpose of transporting * * *, gasoline and other commodities transportable by pipeline.''

On July 27, 1960, the appellees, S. B. Thomas and others, filed their original bill of complaint against the appellants City Council of Greenville and the Mississippi Power & Light Company, for a permanent, mandatory and prohibitory injunction to require the appellant City Council of Greenville to remove that portion of the street known as Causey Drive where it crosses the north 30 feet of Greenway Park, and to require the appellant Mississippi Power & Light Company to remove its transmission lines and towers from the north 100 feet of the said Greenway Park, or, in the alternative to place its transmission lines underground, the bill of

complaint alleging that the 50-foot steel towers and high voltage electric transmission lines constitute an attractive nuisance for the children using the said park, and constitute a dangerous hazard for children flying kites and model airplanes in the said park. But nowhere in the bill of complaint is it alleged that the portion of Causey Drive running across the northern end of Greenway Park substantially or materially interfered or interferes with the use of Greenway Park as a park. There is no allegation that its usefulness as a park has been destroyed or seriously impaired.

The appellants each filed a general demurrer and a special demurrer to the bill of complaint. The grounds of the general demurrer were (1) that there is no equity on the face of the bill, (2) that the bill of complaint failed to state a cause of action, and (3) that the original jurisdiction to regulate the operation and maintenance of the facilities of the Mississippi Power & Light Company is vested exclusively in the Mississippi Public Service Commission. The special demurrers asserted the additional ground that the bill of complaint was multifarious and that the same was barred by the ten-year and six-year statutes of limitation. The demurrers were all overruled, and on motion of the defendants an interlocutory appeal to settle the principles of the case and to avoid expense and delay, was granted with supersedeas, upon the filing of an appeal bond by the defendant Mississippi Power & Light Company in the sum of $1,-000, within the time provided by law,—no appeal bond being required of the defendant City Council of Greenville.

██ █ The declared public policy of this State, as evidenced by such statutes as Section 2778, 2780, 7723, 7737 and 4070, Code of 1942, is to encourage the development of the public utilities by affording them the right to place their lines along the streets and highways. This

was expressly declared in the case of Gandy v. Public Service Corp. of Miss., 163 Miss. 187, 140 So. 687.

In reaching our conclusion that the general and special demurrers interposed by both the City of Greenville and the Mississippi Power & Light Company should have been sustained, we base our decision on Section 17, subparagraph 8, of the special charter of the City of Greenville, and upon Sections 2778 and 2780, Code of 1942. As to the right of the appellant Mississippi Power & Light Company not to be mandatorily enjoined to remove its towers and transmission lines from along Causey Drive through the northern end of Greenway Park; and as to the right of the City Council of Greenville not to be mandatorily enjoined and required to close or remove Causey Drive from the north end of the Greenway Park, we find that nowhere in the bill of complaint is it alleged that the portion of Causey Drive running along the northern edge of Greenway Park substantially or materially interfered or interferes with the use of Greenway Park as a park; and we find no allegation that its usefulness as a park has been destroyed or seriously impaired.

Moreover, the bill of complaint alleges as to the appellant City of Greenville "that on or about 6 April 1954, the defendant city announced its intention to construct Eureka Street from Robertshaw Street south to Camwyn Road (now known as Causey Drive), and a thoroughfare across the northerly portion of Greenway Park and adjacent to the complainants' property, and which thoroughfare was intended to be and was constructed to be an integral part of the arterial traffic plan for the purpose of carrying heavy through traffic, and not for the purpose of providing access to said park, already served by Cedar Street, by a dedicated alley, and by Fairview Avenue (which is a principal north-south street in said city, joining with principle east-west streets) abutting said park for its entire easterly bound-

ary. Complainants allege that at the time the defendant city announced its intention to construct said thoroughfare, contrary to the master plan for streets it had adopted, they and other residents of said Kirk Addition protested vigorously, on three grounds: (1) that it would lower property values, (2) that it would create a hazard, and (3) that it was not needed and unnecessary. However, the defendant city ignored their objections and constructed Causey Drive for the purposes above stated.''

Thus it appears that the appellees and other protested to the City Council against the establishment of Causey Drive, but took no steps to prevent the same being opened up and use as a public street. They did not appeal from the decision of the City Council in that regard, but waited for almost six years to institute this suit for a mandatory injunction against both of the appellants for the purposes hereinbefore stated. In a number of the cases decided by this Court, and relied upon by the appellees on this appeal, there was an appeal taken from the order of the governing authorities of the municipality, whereas in the instant case the appellees did not take any affirmative action but apparently acquiesced in the expenditure of money for the establishment of Causey Drive by the City of Greenville and for the installation of the towers and transmission lines by the Mississippi Power & Light Company, and now seek by mandatory injunction to require the appellant City of Greenville to close or remove Causey Drive from the park, and to require the appellant Mississippi Power & Light Company to either remove its 50-foot towers and transmission lines from the park entirely or to place the same underground.

 █ It is to be noted that the covenant in the deed of January 21, 1910, from the Delta Fair Association to the City of Greenville for the 13.2 acres of land is to the effect that the land was ''to be held, maintained, and kept open by the City for the purpose of a park

* * *'', and does not provide that the same is to be "for the purpose of a park only" or "for the purpose of a park and for no other purpose" as was provided in the deeds in many of the cited cases. In the case of State Highway Comm. v. Yellow Creek Drainage Dist., 181 Miss. 651, 180 So. 749, the Court said: "In the absence of some statute expressly forbidding it, property devoted to one public use may be taken for another public use where the taking will not materially impair or interfere with, or is not inconsistent with, the existing uses and not detrimental to the public interest. It is not material that some inconvenience may result to the prior occupant if the conditions are such that the two uses can stand together. 'The rule that power must be conferred expressly or by necessary implication applies only where the second use will destroy or injure the use to which the land was originally appropriated.' 20 C. J. 605, Section 91; Canton v. Canton Cotton Warehouse Co., 84 Miss. 268, 36 So. 266, 65 L. R. A. 561, 105 Am. St. Rep. 428; Washington County v. Levee Com'rs., 171 Miss. 80, 156 So. 872; City of Greenwood v. Gwin, 153 Miss. 517, 121 So. 160, 163. In the Gwin case the Court used this language: 'Property already devoted to public use may be again taken or damaged for public use.' " But see especially the case of Willmut Gas & Oil Co., et al v. Covington County, 221 Miss. 613, 71 So. 2d 184, involving Sixteenth Section lands reserved for school purposes.

 We do not think that the bill of complaint states a cause of action for damages against either of the appellants; we think that the matter of where the streets of a municipality should be located was a legislative question for the determination of the City Council of Greenville and that the special charter of the City, a provision from which has been hereinbefore quoted, and Sections 2778 and 2780, Code of 1942, confer the right upon the City to grant to the appellant Mississippi Power & Light

Company the right to place its poles and lines along public lands and streets.

Great emphasis is placed by the appellees upon the provisions of Section 2780, Code of 1942, which authorizes those "operating lines for transmitting electricity for lighting, heating and power purposes," to place the same along or across public lands, *"but not in a manner to be dangerous to persons or property, nor to interfere with the common use of such * * * public lands."* (Emphasis supplied.)

■■■ According to the allegations of the bill of complaint this street and the power lines had existed where they are now for a period of more than six years prior to the filing of this bill of complaint. The bill does not allege wherein the same had, during that period of six years or more, proved to be dangerous to persons or property or interfere with the common use of the land as a park. The allegation as to the power lines of the appellant Mississippi Power & Light Company is that they constituted an attractive nuisance for the children using said park, and constitute a dangerous hazard for children flying kites and model airplanes in said park. This appears to be a mere conclusion of the pleader since no incidents are alleged as a fact to have occurred to show that the power lines had proven to be dangerous to persons or property or interfere with the common use of the same during the six years prior to the filing of the suit.

■■■ While Section 2780, Code of 1942, expressly empowers a public utility to exercise the right of eminent domain, it is not required by the statute that condemnation proceedings be resorted to where an individual owner shall consent to the use of his property without compensation, or where the governing authority of a political body or subdivision is authorized to give its consent to the use, without compensation being made therefor. In the instant case the special charter of the

City of Greenville authorized the city to grant to any person or corporation the use of the streets, alleys and public grounds for the laying of electric power lines to be used in furnishing or supplying the city and its inhabitants or any person or corporation with lights.

We think there is a difference between the dedication of a park under circumstances which create a trust and the purchase by a municipality of land for use as a park. In 39 Am. Jur., Parks, etc., Section 21, p. 816, it is stated as follows: ''The extent to which the use of park property may be changed is governed, to some extent, at least, by a consideration of the manner in which the property was acquired, whether by dedication by the owner or purchase or condemnation by the municipality.''

For instance, the case of Board of Mayor and Aldermen of Yazoo City v. Wilson, 232 Miss. 439, 99 So. 2d 674, is not applicable here, for in that case there was a dedication of the park without consideration to the dedicator. The land in the present case was purchased for value but the words contained in the deed with reference to the use to which the lands were to be put by the city were not sufficient to create a condition subsequent. Thornton v. Natchez, 88 Miss. 1, 41 So. 498. In the Natchez case, the land was purchased for value for a cemetery, and the deed recited ''for the uses and purposes of a burial place and to be forever kept, used and enclosed in a decent manner and to and for no other use or purpose whatsoever.'' The conversion of a part of said land for park purposes brought about the lawsuit in that case, and the court said ''. . we are to conclude that the grantors meant that the land should be used for the purpose for which they desired it to be used as long as it was right and proper to do so, in view of the nature of the grant and of its purposes.'' The quotation just ended was approved by this Court

having theretofore been reported in 129 Fed. 86, when that litigation was in federal court.

We do not think that the complaints were entitled to the mandatory and prohibitory injunctions prayed for, nor to the other relief sought, and that therefore the demurrers should have been sustained instead of being overruled.

Reversed and Remanded.

All Justices concur, except *Rodgers, J.,* who dissents.

RODGER, J., Dissenting:

I must voice my disagreement with the results reached by the majority of the judges in their opinion in this case; because in my opinion we have brushed aside the uniform, almost universal, and certainly overwhelming rule that property dedicated to the public for park use by a covenant in a deed to a city, and when the contract is consummated by acceptance, the property becomes trust property and cannot be diverted and subjected to a use clearly inconsistent with the contract of dedication.

This rule is so well established in the law of this country and of England that I will not attempt to catalogue the authorities, except to point out a few authorities which may be used as a starting point for research purposes. Rowzee, et al. v. Pierce, et al, 75 Miss. 846, 23 So. 307, 65 Am. St. Rep. 625; Jones, et al v. Mayor and Board of Aldermen of City of Jackson, 104 Miss. 449, 61 So. 456; Board of Mayor and Aldermen of Yazoo City v. Wilson, 232 Miss. 435, 99 So. 2d 674; 39 Am. Jur. p. 816, Parks, Squares, and Playgrounds, Section 21; ibid., p. 819, Section 24; ibid., p. 821, Section 25; ibid., p. 823, Section 27; Anno. 144 A. L. R. 488; 118 A. L. R. 1247; 63 A. L. R. 485; 11 Ann. Cas. 468; 21 Ann. Cas. 689; Ann. Cas. 1918 E 485; Baldwin Manor, Inc. v. City of Birmingham, 67 N. W. 812; City of Jack-

sonville v. Jacksonville Ry. Co., 67 Ill. 540; Carson v. State, 38 N. W. 2d 168; Board of Park Com'rs. of Ashland, et al. v. Shanklin, et al, 199 S. W. 2d 721; Headley, et al. v. City of Northfield, et al, 35 N. W. 2d 606; Bernstein, et al v. City of Pittsburgh, et al, 77 A. 2d 452; Beth Israel Hospital Assn. v. Moses, 275 N. Y. 209.

The deed from the Delta Fair Association to the City of Greenville has written in it the following restrictive clause: "It is hereby specially provided and conditioned as a covenant running with this conveyance that said tract of land (i. e. Greenway Park) herein conveyed is to be held, maintained and kept open by said city for the purpose of a Park for white people."

The average citizen thinks of a park as: "* *'a pleasure ground—a place of enjoyment and recreation and for the public generally,' eliminating 'all idea of business or administrative uses, or enjoyment by a limited number of people'. A similar test has been applied for beach front, when turned into park areas. Parks have been looked upon as 'set apart and maintained by the cities as places conducive to the health, pleasure, comfort and amusement of the public. An enjoyment of fresh air and sunshine, and also the grass, flowers and trees, is most important in securing the social, physical, and moral well being of the people, and parks, as a means of providing these bounties of nature for all the people, have come to be considered as essentially necessary.' Humphreys v. San Francisco, 92 Cal. App. 69, 75, 268 P. 388, 391 (1928)." Rhyne's Municipal Law, p. 465.

Parks are sometimes called Promenades because these plots of ground are places where natural plant life is permitted to grow, and people are accustomed to walk. They are sometimes called commons; because they are used by the public. We have grown accustomed to seeing children play in the parks, and in this case the bill charges that a part of the park is used by a "Little League Baseball Team".

The bill of complaint in this case alleges that the power lines constructed across the park where children are invited to play are ''dangerous and constitute a hazard for children flying kites and model airplanes in the park''. This, of course, is subject to proof, but it appears to me to be a foregone conclusion that sooner or later some child will be in some manner electrocuted by any electric high power lines constructed over any play ground where children are accustomed to play. It is an anomalous situation when the law will establish game preserves where wild game is safe, being legally protected, and children cannot have a play ground or a park where they can safely play without having it invaded by dangerous electric high power lines. This is especially true in a case like the case at bar where the city accepted this property with the understanding that it would keep Greenway Park open as a park.

The authorities cited above will demonstrate that the complainants had a right to bring this suit, and I believe the Chancellor was right in overruling the demurrers.