232 Miss. 435 (1958)
99 So.2d 674
BOARD OF MAYOR AND ALDERMEN OF YAZOO CITY
v.
WILSON.
No. 40603.
Supreme Court of Mississippi.
January 13, 1958.
T.H. Campbell, Jr., Yazoo City, for appellants.
*437 E.G. Cortright, Jr., Yazoo City, for appellees.
HALL, J.
On March 21, 1890, the Lintonia Land Company, being the sole owner of a large tract of land in Yazoo City, filed an official map according to law to Lintonia, an addition to Yazoo City, Mississippi. This map shows numerous streets, alleys and lots. It also shows a block of land 300 feet square which is marked "Public Park". Immediately south of this park there is shown a street which is named Fourth Street and is 60 feet in width. Just south of this street and abutting thereon the City recently purchased 6 lots, title to which was taken in the name of the City and not in the name of the school district. A contract was let and a junior high school was erected on these lots and it was so erected as to set back only about 8 or 10 feet from Fourth Street.
*438 The City proposed to close that portion of Fourth Street lying immediately north of the school building and south of the public park for a distance of 300 feet. There was filed with the Board of Mayor and Aldermen a protest signed by approximately 50 residents of the area in question and the matter was set for hearing before the Board of Mayor and Aldermen for April 2, 1956. Following the hearing the City adopted an ordinance closing the said Fourth Street for said distance of 300 feet, from which action this appeal was prosecuted by certiorari to the circuit court, and by agreement of the parties the circuit judge took the case under advisement for decision and judgment in vacation, and finally on December 7, 1956, the circuit judge rendered his opinion holding the ordinance void, from which action the City appeals here.
The bill of exceptions shows that the City alone acquired title to the lots on which the school building was erected. It contains a copy of the plat of Lintonia Addition which was introduced in evidence at the hearing before the City board and it shows that Lintonia Land Company has never parted with the title to the square of land which is marked "Public Park". The bill of exceptions shows that two members of the school board requested the City to close said portion of said street and had requested the City to remove the pavement on said portion of said street and to fill the same with dirt and to place grass thereon and to allow the school board and the school children attending said school to use said portion of the lawns and grounds of said school as an access of said children in travelling from said park to said school and from said school to said park and that it has been and still is the intention of the school board to allow said school children to use the said public park north of the school site for playground purposes. In fact the president of the school board testified that it was the intention of the school board to allow the children to play in said public park, which would in effect convert *439 the same from a public park to a school playground. Another member of the school board testified that in his opinion it would be dangerous to the children not to close the street, but it was not shown that this member of the board was a traffic expert. There was no evidence that the City contemplates replacing said portion of Fourth Street by another street or highway which would be more convenient or accessible to the motoring public or by any other street or highway whatsoever, and there was no evidence showing that the expense of maintaining said portion of Fourth Street was a considering factor in deciding whether or not to vacate said portion of said street. The president of the school board further testified that if the street were left in its present condition it would endanger the children to have barricades or blockades at each end of said portion of said street during school hours because vehicles might crash through said blockades and that there was also danger of children falling in said Fourth Street and injuring themselves from its paved hard surface. He was likewise not a traffic expert.
The protestants contend that said ordinance is unreasonable, arbitrary, unlawful, illegal, and in violation of the Constitution of the State of Mississippi and in violation of the rights of the general public; that said ordinance is against the best interest of the general public and is in violation of the terms on which said portion of said street and said park were dedicated to the general public and that said ordinance was passed for the purpose of allowing said portion of said street and said park to be used as and made a part of the lawns and playgrounds of the school, and further that the ordinance gives to the school and to the children attending same a special ingress and egress to and from said park and beyond that given to the general public, and that the effect of said ordinance is to give to said school and the children attending same the said portion of said street and said park in violation of the rights of the general *440 public. The bill of exceptions shows that there is no record of any deed whatsoever, excepting the aforesaid plat, of the aforesaid street and park to the city and the whole title and right of the city rests solely upon the dedication shown by said map.
The circuit judge in a written opinion found that the action of the city in closing the street is a subversion of the public park and a changing of its use from that of a public park dedicated to the use of the public to a part and parcel of a playground of a public school which is founded and maintained for the benefit of a few, to wit, the children of that particular school who attend same during a certain portion of their lives. The lower court held that the action of the city in closing Fourth Street at that point amounts to an actual and outright subversion of a park dedicated many years ago to the public generally as a place of recreation, amusement and solace from the stress of modern city life, and that the intention of the school board to use the public park for playground purposes is itself specifically expressed in the ordinance. He held that the upholding of this ordinance and the carrying out of the avowed intention of the school board would make the complete end of the property as a public park, and that its effect would be the same as if the actual school building had been placed in the park itself. The lower court further held that while the protestants did not own property actually abutting on that portion of the street to be closed, nevertheless they do own property abutting on the park and that the act of the school board in incorporating the park into the school yard is an act tantamount to closing the park. The lower court further held that under the police powers of the city an ordinance might be passed providing for the temporary blocking of traffic from this street during recess hours or even during all school hours.
(Hn 1) In 26 C.J.S., Dedication, Section 23b, page 446, it is said: "Unless an intention to the contrary is disclosed, it is generally held that where the owner sells real *441 property with reference to a map or plat, he manifests an intention to dedicate to public uses squares or parks indicated on the map or plat."
(Hn 2) In 63 C.J.S., Municipal Corporations, Section 967, page 517, it is said: "Lands taken and held by a municipality under grant, will, gift, or dedication for a specific purpose are subject to the law of trusts, and may not be alienated by the trustee at will without lawful authority, even though the municipality itself is a beneficiary. If the trust is for the public the legislature, as supreme trustee, may authorize its disposition, subject, however, to any private right or trust therein. Although the legislature may authorize a municipality to convey property held in its trust capacity for a particular use, it has been said to be the consensus that this must be done specially, and that such authority may not be implied from a general power to acquire, alien, and convey. Where property is conveyed to a municipality to be used and disposed of in a way `conducive to the welfare and advantage of the said city and its inhabitants,' the elements of benefit to the city which its council is entitled to take into consideration in managing and disposing of the property are essentially the same as though they were trustees appointed under a will."
And in the same volume on the same subject, in Section 950 at page 500, it is said: "Municipal officers have only limited powers with respect to property dedicated to public use. * * * Under some statutes, a municipal corporation may accept a grant of real property subject to reasonable restrictions and conditions, and, where a grant is so accepted, the restrictions and conditions are binding on such corporation."
(Hn 3) In 62 C.J.S., Municipal Corporations, Section 189, pages 347, 348, it is said: "The public property of a municipal corporation, real and personal, or in other words such property as is held in trust for the public generally, is subject to the control of the legislature. It *442 has been so held, for example, of squares, parks, and promenades; * * *. The power of the legislature, however, over property dedicated to a particular public use is not absolute. While it may regulate the use of such property or promote its improvement, it cannot divert or subject it to any use clearly inconsistent with the contract of dedication."
In the case of Rowzee v. Pierce, 75 Miss. 846, 23 So. 307, 40 L.R.A. 402, the Court had before it the question of an ornamental park which had been donated by deed to the Town of Pontotoc, which deed provided that it was only for public use as an ornamental park subject to such regulations as the city may make for the purpose of fencing and ornamenting the same and keeping the same in good order and preventing nuisances or anything tending to subvert the declared object of the donors of money to purchase the same, and said deed and said dedication was duly accepted by the board of mayor and aldermen of the Town of Pontotoc. Adjacent to this ornamental park was a public school and the same was destroyed in January 1897. The board entered into a contract with Pierce to erect another schoolhouse and instead of building the same upon the site of the burned school or on land belonging to the school district Pierce began the construction of a building, with the consent and approbation of the board of mayor and aldermen, and property owners of the town, sought an injunction to prohibit the placing of the school building within said park as the same was not consistent with or necessary to the principal use for which said dedication was made  that of an ornamental park only; it was alleged that the erection of said school building in said park was a direct and palpable violation of the use for which same was dedicated and it sought an injunction to restrain the building of said school house upon said park. A demurrer was filed and the complainants asked leave to amend their bill. The chancellor disallowed the amendment, sustained the demurrer, dissolved *443 the injunction and dismissed the bill. In a lengthy opinion numerous authorities were cited by the court, among which was Commonwealth v. Rush, 14 Pa. St. 186, and our Court said with reference thereto: "So, that it is clear that the terms of this grant dedicated the ground to use as a public ornamental park alone, and that the word `park' ex vi termini, means a place to be kept open and ornamental for public uses, such as above indicated. It is also clear that the right to regulate the park, under this specific use, furnishes no right to change that use. But it is said again that this ground cannot be dedicated to the use of a park better than by erecting this building; that the construction of such a building is, on the doctrine of cy pres, appropriating it to the next best use in the nature of an ornamental park; but the authorities above cited show that no such construction can be indulged on the facts in this case. Board of Education v. Edson, 18 O. St., 226; Church v. City of Portland, supra; Perry on Trusts, vol. 2, sec. 727; 2 Pom. Eq. Jur., sec. 1027." In concluding the opinion in this case Judge Whitfield said: "Neither can it be necessary that a public school building should be erected in the park. No reason is shown why it might not as well have been erected on the site of the original building. But however all this may be, it remains true, on principle and on authority, that, the original donors dedicating this ground for a public ornamental park alone, are entitled in equity to prohibit the city authorities, or anyone in conjunction with them, from devoting it to any other use than such as is clearly consistent with the purposes of the original grant."
(Hn 4) In the case of Jones v. City of Jackson, 104 Miss. 449, 61 So. 456, there was involved the question of the right of the City of Jackson to depart from the use of Smith Park as a public promenade. Smith Park was owned by the State and in 1821 the state by an act of the legislature appointed commissioners to locate two sections of land in territory lately ceded to the United States *444 by the Choctaw Indians and the commissioners were empowered to locate a permanent seat of government and were authorized to lay off a town on such part of the location so made and on such plan as to the commissioners might seem most advisable, and that the town so laid out should be called by the name of Jackson. In 1822 the legislature passed another act approving the previous acts on the subject and establishing the town of Jackson and provided that the commissioners should cause a copy of the plan of said town to tbe recorded in the office of the clerk of the county court or in the office of the register of the probate court of Hinds County and another copy to be certified, signed and deposited in the office of the secretary of state. Among other things the commissioners placed a square known as Smith Park on the map or plat prepared by them and it is shown on the map as "promenade". There was never any grant to the city; merely a dedication of the square for a commons and this Court said "it must remain a commons forever and be kept open to the public as such". It was shown that the City was about to authorize the building of a library on one corner of the park. "Taking into consideration the time when the state dedicated this square, and the uses to which it was dedicated, we think it was the intention that the square was to be kept open for the use of all the people, and that this was the construction placed upon the act by the commissioners appointed to carry out the purpose of the dedicator is manifested by the designation of the square as a `Promenade'. `Whether or not a particular use of land dedicated for squares, parks, and commons amounts to a diversion from the uses for which it was dedicated depends upon the circumstances of the dedication and the intention of the parties making it, and is therefore largely a question of fact.' The authorities with reference to this principle are collated in the note to Codman v. Croker, 25 L.R.A. (N.S.) 980."
In our conferences on the case at bar it was pointed out that the above mentioned two Mississippi cases were *445 suits in equity to prevent the city from using the parks for some purpose other than that to which it was dedicated, but it must be remembered that in those cases the persons filing the suit had no opportunity to appeal from the action of the city council and were consequently forced to go into equity if they obtained any remedy. Here we have a case where the matter was thrashed out and all parties heard by the board of mayor and aldermen and an appeal was prosecuted from their decision. In the cases mentioned there was no opportunity for an appeal and while the lower court stated in his opinion that he thought it would have been better for the case to be in the equity court, nevertheless he considered the appeal as the statute authorizes and found that the city was about to violate the purpose of the dedication of this public park. This is not a case where the city ordinance provided for a limited closing of the street, as for instance from the hours of 8 A.M. until 4 P.M. during school days. It is an outright unconditional closing. Under the ordinance here and the proof adduced at the hearing, the whole design of the city is the appropriation of the public park as a playground for the school. We think that the city should not be permitted, under the guise of closing a street, to acquire as a playground for the school a public park which it does not own. If the school must have the park as a playground, there is a remedy provided by Section 2781 of the Recompiled Code of 1942. It is well settled in this state that the owners of property, abutting on a city street, have title to the center of such street, subject to the use thereof as such and that upon closing such street the use returns to the respective owners, but by closing this particular street the authorities expect to tear up the pavement, level and sod the street with grass whereby it will be merged with the park and thereby appropriated, both the entire street and the park, as a playground for the school. There is a great deal of difference between a public park and a school playground. A public park is for the use of the entire public but a school *446 playground is largely a private place where the general public has no business and to which the general public would be afraid to go lest they be accused of being child molesters.
In Douglass v. City Council of Montgomery, 118 Ala. 599, 24 So. 745, 43 L.R.A. 376, the Supreme Court of Alabama said: "It is stated in 15 Am. & Eng. Enc. Law, 1064, that `municipal corporations hold the title to streets, alleys, public squares, wharves, etc., in trust for the public; and upon principle, such trust property can no more be disposed of by the corporation than can any other trust property held by an individual.' In the note to the text, many decisions are cited in support of the principle stated. * * *
"Judge Dillon states the rule to be, that `municipal corporations possess the incidental and implied right to alienate or dispose of the property, real or personal, of the corporation, of a private nature, unless restrained by charter or statute; they cannot of course, dispose of property of a public nature, in violation of the trusts upon which it is held, and they cannot, except under valid legislative authority, dispose of the public squares, streets, or commons.' 2 Dill. Mun. Corp. Secs. 575, 650, and numerous authorities cited. Another phase of the rule should be added in this connection, as we find it stated in the Encyclopedia: `When lands, held by a municipality for public use, are not subject to any special trust, the legislature may authorize a municipal corporation to sell and dispose of the same or to apply them to uses different from those to which they are devoted, but in the absence of such authority, the municipality has no implied power to do so. * * * If, however, the lands have been dedicated by private individuals for a public park or square, the legislature has no authority to authorize any diversion from the uses to which they were originally dedicated.' 17 Am. & Eng. Enc. Law, 417, and authorities. * * *
*447 "There are authorities which hold, that nonabutting property owners upon a square or park cannot complain of its being closed by municipal authority; but with such a doctrine, if necessary to decide, we might not agree. There is a marked difference between the uses and trusts as ordinarily imposed in the dedication of streets or highways in a city, and those imposed in the dedication of public squares or commons, and in the uses and enjoyments of the people therein. The municipality may allow uses in the one that it cannot in the other. The uses of each are distinct, and the rights of abutting proprietors on each, are different. It is allowed, generally, that such a proprietor as to a street owns to its center, but there is no such right, or anything accruing from it, in an abutter on a park. The street must be kept open, as long as used, but the park may be inclosed, improved and ornamented for pleasure grounds and amusements, for health and recreation. 17 Am. & Eng. Enc. Law, 416. In speaking of this difference between the rights of property owners attingent to a street and a public common, dedicated to public uses, this court, in Railway Co. v. Rand, 83 Ala. 294, 3 South. 686, said the rule of law was entirely different when applied to the two; that `the purpose to which such dedication is made, the use or changing uses to which it may be applied, and many other distinguishing characteristics, demonstrate that neither the rule nor the reason of the rule, on which the law of the street or highway rests, can be made applicable to a public common. The differences will naturally suggest themselves, and we need not attempt their enumeration.' * * *
"In Maywood Co. v. Village of Maywood, 118 Ill. 61, 6 N.E. 866,  a bill filed by the village and Small and Hubbard, residents therein, to prevent obstructions to a public park,  it was said: `The objection of multifariousness or misjoinder of complainants we do not regard as well taken to the bill. Small and Hubbard, as residents of the village, have a common interest with each other and *448 with the village itself, in preventing any obstruction to the use of the public square for the purposes of a park. * * * Again, the evidence shows a threatened nuisance tending to deprive appellees and others of the full and free use of this park, as they were entitled to have it used. This is a well-recognized ground of equitable interposition.' Zearing v. Raber, 74 Ill. 409. When a dedication of land for a public park is made by or to a town or city, it inures to the benefit of all who are at the time, or may afterwards become citizens of the municipality, which holds in trust for the benefit of the public, with no power to convey or divert it to other uses. This right of use belongs equally not only to lot holders of the corporation, but to all inhabitants, in the future as well as at present, according to their various necessities or conveniences. Mayor, etc., v. Franklin, 12 Ga. 239; Alves v. Town of Henderson, 16 B. Mon. 131, 169; Campbell Co. Ct. v. Town of Newport, 12 B. Mon. 541; Pomeroy v. Mills, 3 Vt. 279; Com. v. Rush, 14 Pa. St. 186; Carter v. City of Portland, 4 Or. 346; City of Alton v. Illinois Trans. Co., 12 Ill. 38; City of Quincy v. Jones, 76 Ill. 231; Railway Co. v. Rand, 83 Ala. 294, 3 South. 686; 2 Beach, Inj. Sec. 1279, and authorities cited in note 1."
In the case of Headley v. City of Northfield, (Minn.) 35 N.W. 2d 606, the Supreme Court of Minnesota dealt directly with the question now before us and said: "The defendant city, being a trustee for the benefit of the public of the public square, will be treated as one by holding it to the duties and the accountability of a trustee. Its duty is to devote the public square to the uses intended by the dedicator. Its accountability is for the discharge of that duty. Any use thereof by the city inconsistent with the uses intended by the dedicator constitutes a breach of trust and a violation of the statute imposing the trust in such cases. Annotations, 144 A.L.R. 488, 63 A.L.R. 485, and 18 A.L.R. 1247; 39 Am. Jur., Parks, Squares and Playgrounds, Sec. 21. The rule in this respect differs from what it is in cases where the public *449 authority acquired title to the fee, or acquired rights by exercise of the power of eminent domain, or was otherwise free from any trust. Spires v. City of Los Angeles, 150 Cal. 64, 87 P. 1026, 11 Ann. Cas. 465; Higginson v. Slattery, 212 Mass. 583, 99 N.E. 523, 42 L.R.A., N.S., 215; 39 Am. Jur., Parks, Squares, and Playgrounds, Secs. 12, 21.
"Use of the public square for a high school athletic field and playground would be a public use, but one not only different in kind from use as a public square, but positively inconsistent therewith and destructive thereof and consequently unlawful. The authorities hold that it is a diversion from the uses intended by the dedicator, and consequently illegal, to use a public square for purposes either of a school (McCullough v. Board of Education, 51 Cal. 418; Melin v. Community Consolidated School District, 312 Ill. 376, 144 N.E. 13; Rowzee v. Pierce, 75 Miss. 846, 23 So. 307, 40 L.R.A. 402, 65 Am. St. Rep. 625. supra), or of a playground (Beth Israel Hospital Assn. v. Moses, 275 N.Y. 209, 9 N.E.2d 838, affirming 250 App. Div. 591, 294 N.Y.S. 1018; McVean v. City of Elkins, 127 W. Va. 225, 32 S.E.2d 233). Use for high school athletic field and playground purposes here contemplates that the public square shall no longer remain free and common for use by all the public, but that it shall be occupied to the exclusion of the general public by grounds specially constructed and equipped for particular athletic and physical activities and by persons engaged thereon in them. The contemplated uses would not only render unfeasible well-recognized and customary uses of a public square such as the one made by elderly people of the benches, of that which gives children a place to romp and mothers a place to wheel their baby buggies, and others which will occur to anyone familiar with the uses of a public square, but would absolutely prevent them. We in effect recognized this to be the fact in Horn v. City of Minneapolis, 182 Minn. 172, 176, 234 N.W. 289, 291, by defining a `playground' as `a piece of *450 park property used almost exclusively for the purpose of playground activities.' * * *
"Authorization of the changed use by the city council does not make it lawful. Use of property for purposes other than those for which it was dedicated cannot be authorized by ordinance * * *.
"An abutting owner acquires as appurtenant to his property every easement, privilege, and advantage which the plat represents as belonging to the lots. The easements, servitudes, and uses shown thereon constitute part of the consideration for all conveyances made according to the plat. Consequently, an abutting owner may maintain an action in his own name to enforce the rights belonging to him as such in a public square shown on a plat which includes his property. Kray v. Muggli, 84 Minn. 90, 86 N.W. 882, 54 L.R.A. 473, 87 Am. St. Rep. 332; Friedman v. Muggli, 84 Minn. 90, 86 N.W. 1102; Flaten v. City of Moorhead, 51 Minn. 518, 53 N.W. 807, 19 L.R.A. 195; Beth Israel Hospital Assn. v. Moses, 275 N.Y. 209, 9 N.E.2d 838, affirming 250 App. Div. 591, 294 N.Y.S. 1018, supra; Rowzee v. Pierce, 75 Miss. 846, 23 So. 307, 40 L.R.A. 402, 65 Am. St. Rep. 625, supra; 16 Am. Jur., Dedication, Sec. 57."
Since the preparation of the foregoing opinion the writer has been furnished a copy of the main dissenting opinion. In paragraph II thereof it is stated that the Judges who voted to affirm the circuit court seem to have reached the conclusion that the ordinance in question constitutes a subversion of Lintonia Park to a school playground, and the dissent then states: "This assumption, in my opinion, is without foundation in the record. There was some testimony before the city board that the school authorities intended that the children play in the park. There is nothing in the ordinance to indicate that the city would convert Lintonia Park into a playground exclusively for school children." The dissent then quotes in full the text of the ordinance and proceeds to argue *451 that the ordinance does not recite on its face that the park is to be converted to a playground exclusively for school children. And the opinion says: "The most that could be made of the case is that school children would play in the park. * * * The matter of the misuse of Lintonia Park is not as issue. The supposed misuse of the park is based on assumptions that do not appear to me to be justified from the ordinance." It is strange indeed that the dissenting opinion is based solely upon the recitals in the ordinance and that no rights are determined as to the use of the park and that no right could be determined in such a proceeding as this.
This matter was heard before the Board of Mayor and Aldermen after a continuance and after a definite date had been set for hearing of the protest against the ordinance and a thorough bill of exceptions constitutes the record in this case on appeal from the action of the City Council. Under our statute, Section 1195, Code of 1942, the only method whereby the protestants in this case could have their rights reviewed is by a bill of exceptions. The ordinance in this case is only a small part of the bill of exceptions. Naturally no one would anticipate that the board would write into the ordinance exactly what they intended to do, but the whole matter was gone into by the Board and considerable testimony was taken as shown by the bill of exceptions. Since this matter was gone into fully by the Board, and since the dissent says there is practically no showing as to what the Board intended to do, I call attention to portions of the bill of exceptions shown on pages 6 and 8 of the record. In the first instance the bill of exceptions shown on page 6 says that the intention of the school board is "to allow said school children to use the said public park north of said school site for playground purposes." This testimony appears without dispute by the evidence given by the president of the Board *452 of Trustees of the Yazoo City Public Schools and he also testified that when the Yazoo City School Board bought the property on which the junior high school now stands "it was the intention of said school board to allow children to play in said public park," and another member of the school board testified that the board would never have bought the present site for the school "if the use of said park by the school children would have been objectionable". In fact throughout the bill of exceptions it appears that the whole hearing before the board was on the question of changing the use of the public park to a school playground. It is strange indeed that the main dissent cites not a single authority which disputes or conflicts with the authorities which are hereinabove given in this opinion.
(Hn 5) From the foregoing authorities we conclude that the city of Yazoo City has no right to appropriate this public park to use as a school playground as the bill of exceptions clearly shows is its intention, contrary to the dedication of the park.
It follows that the judgment of the lower court should be affirmed.
Affirmed.
McGehee, C.J., and Lee, Arrington and Ethridge, JJ., concur, Holmes, J., took no part.
GILLESPIE, J., dissenting:
I respectfully dissent.

I.
Section 3374-12, Code of 1942, vests in a municipality the power to close and vacate streets, the only requirement being that abutting property owners must be compensated for any damage sustained. It is conceded that appellees are not abutting property owners. The only property abutting that portion of Fourth Street vacated by the ordinance is the school on the south and the park on *453 the north. "To deny the municipality this right (to vacate a street) would be to deny to it the power to exercise one of the most important protective duties that it owes the public." Poythress v. R.R. Company, 92 Miss. 638, 46 So. 139.
"The question of the necessity for closing a street or highway as distinguished from the question of the public purpose or use, belongs exclusively to the legislative department of the government, so, it is within the province of the public authorities in whom the power to vacate is vested to determine when it is to be exercised and their action in this regard will not be reviewed by the courts, in the absence of fraud or a manifest abuse of discretion. The Court cannot control or revise such decision on the ground of inexpediency, injustice or imprioriety. Nor will it inquire into the motive of the tribunal to which the matter is committed where there is no allegation of fraud." 25 Am. Jur., Highways, Sec. 120.

II.
The circuit court held the ordinance invalid solely on the ground that it constituted a subversion of Lintonia Park to a school playground. The judges who voted to affirm the circuit court seem to reach the same conclusion. This assumption, in my opinion, is without foundation in the record. There was some testimony before the city board that the school authorities intended that the children play in the park. There is nothing in the ordinance to indicate that the city would convert Lintonia Park into a playground exclusively for school children. The full text of the ordinance is as follows:
"There came on for consideration at this, the regular adjourned meeting of this Board, the protests filed by Mrs. Claudia Wilson, and others, to the proposed action of the Board of vacating that part of Fourth Street between Webster Ave. and Jackson Ave. fronting on the newly erected Junior High School on the South and on Lintonia Park on the north. E.G. Cortright, Jr., representing *454 the protestants, to said proposed action, presented to the Board a sworn statement by him that he asked to be made a part of the record, and asked that there also be filed with the Board as Exhibits to the protests the aforesaid petitions and a certified copy of a plat of Lintonia Addition to Yazoo City, Mississippi, Deed of J.F. Powell, et al, to Lintonia Land Company, and minutes of the Board, all of which were duly received by the Board and ordered filed with the Clerk as Exhibits.
"The City Attorney, representing the Board, offered as an exhibit before the Board, and asked to be filed in behalf of the Board, a copy of the site plan of the new Junior High School located on Lots 179, 180, 197, and 198 of Lintonia Addition, which lots front on the South side of that portion of Fourth Street lying between Webster Ave. and Jackson Ave. and which school also is located on Lots 178 and 199 of Lintonia Addition adjacent to the above lots and South of the above lots, which six lots constitute the area occupied by said Junior High School.
"THEREUPON, the remarks of any of the protestants present wishing to speak were heard and considered, and it was determined by the Board and admitted by the protestants that none of them were abutting property owners on that portion of Fourth Street proposed to be closed, and that the only abutting property owner thereon was the City, and that there were no abutting property owners on that portion of the alleys lying between the aforesaid lots of Lintonia Addition which the Board propose to close and vacate other than the City of Yazoo City. Various members of the City School Board who had requested the Board of Mayor and Aldermen to close and vacate said streets and alleys were present and stated their reason therefor as being in the interest of the safety of school children who would be endangered from traffic in crossing from the school grounds to Lintonia Park, it being anticipated that the Park would *455 be attractive to the children at the school. After hearing the various parties present and the remarks of Mr. E.G. Cortright, Jr., representing the protestants, and those of T.H. Campbell, Jr., City Attorney representing the Board, the Board took up for consideration the proposed ordinance which was offered for consideration by Alderman C.L. Graeber, Jr., which ordinance is in the following form, to-wit:
"AN ORDINANCE VACATING AND CLOSING THAT PART OF FOURTH STREET BETWEEN JACKSON AVENUE AND WEBSTER AVENUE, AND THOSE ALLEYS SITUATED IN THE BLOCK BOUNDED BY JACKSON AVENUE, WEBSTER AVENUE, THIRD STREET AND FOURTH STREET, EXCEPT FOR SUCH PARTS OF SAID ALLEYS AS LIE BETWEEN LOT 177 OF LINTONIA ADDITION AND LOT 200 OF LINTONIA ADDITION TO YAZOO CITY, MISSISSIPPI.
"WHEREAS, that certain block or square of land situated in Lintonia Addition to Yazoo City, Mississippi, and heretofore dedicated to and owned by the City as a park lies along the North side of that portion of Fourth Street of said City which lies between Jackson Avenue and Webster Avenue, and
"WHEREAS, along the South side of that portion of Fourth Street of said City lying between Jackson Avenue and Webster Avenue are situated Lots 179, 180, 197, and 198 of Lintonia addition owned by Yazoo City and on which, together with Lots 178 and 199 of Lintonia Addition, there has recently been erected and constructed a new Junior High School, and
"WHEREAS, the said City is the only abutting property owner upon that above mentioned portion of Fourth Street, and
"WHEREAS, those certain alleys within the block bounded by Jackson Avenue, Webster Avenue, Third Street, and Fourth Street, except for parts of said alley *456 as may lie between Lots 177 and 200 of Lintonia Addition, lie between lots presently owned by the City and used for said Junior High School purposees, and
"WHEREAS, the said City is the only abutting property owner on that portion of Fourth Street above mentioned, as aforesaid, and is the only abutting property owner on that portion of the alley above mentioned, and
"WHEREAS, in the use of said new Junior High School, it appears to the Council, and the Council does hereby expressly find, that to leave the above mentioned portion of Fourth Street open to traffic, and to leave the above mentioned portion of said alley open to traffic will be extremely dangerous to pedestrians, and especially to school children, in traveling over, on, and across said portion of said Fourth Street and said portion of said Alley, and that it is to the best interest of the general public and in the public welfare that said portion of said street and said portion of said alley be closed and vacated;
"NOW, THEREFORE, BE IT ORDAINED BY THE BOARD OF MAYOR AND ALDERMEN OF YAZOO CITY, MISSISSIPPI IN COUNCIL CONVENED:
"SECTION 1. That that portion of Fourth Street of said City lying between Jackson Avenue and Webster Avenue, and those certain alleys located within the block bounded by Jackson Avenue, Webster Avenue, Third Street and Fourth Street, except for such parts of said alleys as may lie between Lot 177 of Lintonia Addition and Lot 200 of Lintonia Addition, be, and the same are, hereby vacated and closed.
"SECTION 2. That this ordinance take effect and be in force thirty days from and after this date as required by Law in this behalf.
"The foregoing ordinance, having been first reduced to writing and read and considered by the Board Section by Section, and then as a whole, was presented and its adoption moved by Alderman C.L. Graeber, and seconded *457 by Alderman W.H. Brister, and adopted by the following vote:
 "ALDERMEN VOTING AYE: Ross M. Turner, Tom
 Hendrix, W.H. Brister
 and C.L. Graeber
"ALDERMEN VOTING NAY: None
"WHEREUPON, THE Mayor declared said ordinance adopted and passed this, the 2nd day of April, 1956.
 "(Signed) Harry Applebaum,
 Mayor
 "ATTEST:
 "(Signed) P.E. Maxwell,
 "City Clerk

* * * *
We cannot attribute to the city authorities evil motives or that they were carrying out a "well planned scheme" to convert the park to a use inconsistent with the dedication. The ordinance does not convert the park to a playground exclusively for school children, and the city disclaims any intention to misuse the park. There is not a scintilla of evidence that the school or city intended to enclose the park or place any improvements thereon. The most that could be made of the case is that school children would play in the park. Is it a subversion of a public park for children to play there? Children are people, a part of the public.

III.
I think there is a misconception of what is before the Court on this appeal. We have for review an ordinance closing a portion of a street in order to provide for the safety and welfare of school children. The matter of the misuse of Lintonia Park is not at issue. The supposed misuse of the park is based on assumptions that do not appear to me to be justified from the ordinance.

*458 IV.
Every case relied upon by those Judges voting to affirm the circuit court are cases brought and tried in a court of competent jurisdiction. Here we have a proceeding resulting in an ordinance closing a portion of a street as a protective measure for school children (a legislative matter) being converted by an appellate court into a judicial inquiry, not to determine legal rights in the park, but to hold invalid a legislative act of the city. I am unable to find a similarly developed case in the books. I would let the ordinance closing the street stand on its own feet and let the city take this protective measure for the school children, and if and when there is any misuse of the park, the courts are open to protect the rights of any and all persons. Thus every one would be accorded every protection provided by the law.

V.
I think that the decision holding invalid this ordinance is an unwarranted judicial interference in local affairs vested by law and common sense in the local authorities. Two of the principal functions of local authorities are the administration of the schools and the exercise by a municipality of its police power to provide for the safety and welfare of all the public, including the school children. The local authorities know and understand the multiple and complex problems arising in particular localities under particular conditions. We cannot know and understand these problems from a few printed pages of a bill of exceptions and a city ordinance. When the local authorities say, in effect, "We have a school with a street running under the windows, and across the street is an attractive park; and children are going to go to the park; traffic on this street will constitute a grave hazard to the children, and children will likely be injured in falling into the street or on the curbs or pavement; this street should be closed for the safety of the children"  *459 I do not think that as a Judge I should be heard to say the city authorities do not know and understand what should be done to provide for the safety of the school children, or say to the city authorities that they do not really mean to protect the children, but are carrying out a scheme to subvert the public park.

VI.
The decision in this case results in an "extremely dangerous" situation to children being maintained; yet nothing is gained. It accomplishes nothing in denying the right of the authorities to close the street for the protection of the school children.
The opinion of the circuit judge and the opinion of this Court recognizes the right in the city to block off that portion of Fourth Street between the school and the park during school hours. In the conferences, this right was recognized as an important factor in the decision.
So the school children will have exactly the same access to the park, and make the same use of the park, as they would if the street were vacated. So what is accomplished by declaring void the ordinance closing the street? One thing, and one thing only, will be accomplished, and that is that the Court has interposed its judicial power to prevent the city from removing a hazard to the children of the school. No rights are determined as to the use of the park. No right could be determined in such a proceeding as this. If those rights are to be judicially determined, it must be in a court of competent jurisdiction in a proper suit with suitable issues drawn.
For the reasons stated, I decline to share any responsibility for the affirmance of the judgment declaring the ordinance invalid.
ROBERDS, J. Dissenting:
I concur in the result reached in the dissenting opinion by Judge Gillespie. However, I desire to emphasize that, as I understand the cases mainly relied upon in the controlling *460 opinion, it was the intent and purpose in all of them to erect upon the dedicated land some building or structure, thereby converting the property to a use not authorized in the dedication. In the case at bar, it is not the intention to erect any structure, or trespass in any manner, upon the park land. At the time of the trial and theretofore a strip of the park land was being used as a paved street. It is now proposed to abandon that street, remove the surfacing material, and sod and plant the strip to grass, in other words, turn the strip back into a park. The municipality had the right to open the street in the first place. To abandon the strip as part of the street and beautify it could not well involve a valid objection. The City had the right to purchase land across the street from the park property and erect a building thereon. The effect upon the number of children who will play in the park is a purely incidental result from acts which the municipality had the right to do. The children are a part of the public and have as much right to use it as do adults. Whether use by the children will result in less use by adults is purely guesswork. Perhaps most parks are used more by children than by adults. The school children are going to play on the park grounds whether there is a street between the school and park properties or not. The only question here is the right of the municipality to close the street. Boiled down, the objection to closing the street is that this will increase the play of the children in the park  a pure conjecture. But, even if so, this is not a valid objection to the right of the City to close the street. Courts cannot apportion the use of the park. Protestants do not even own property abutting on the street proposed to be closed nor are they vested with any special interest in the park property.
KYLE, J., concurs in this dissent.