ALDEN *v.* LEWIS, EXR. OF ESTATE OF
KATE A. SKIPWITH, DECEASED, et al.

No. 43761     February 7, 1966     182 So. 2d 600

*Wells, Thomas & Wells,* Jackson; *Armis E. Hawkins,* Houston; *Roberts & Craig,* Oxford, for appellant.

*Freeland & Gafford, J. W. Price,* Oxford; *L. G. Fant, Jr.,* Holly Springs, for appellees.

ETHRIDGE, C. J.

This case involves the principal question of whether the provisions of a will, dedicating funds to enlarge and

assist in maintaining an art and historical museum, established a valid charitable trust. The Chancery Court of Lafayette County held that it did, and we affirm that decree.

I.

Miss Kate A. Skipwith, a resident of Oxford, executed her will on December 18, 1957, and on May 29, 1958 she made a codicil. She died on May 9, 1961, having never married. Mrs. Mary Adair Alden, a niece of the half-blood, contested probate of the will, on the grounds of undue influence and mental incapacity. The chancery court's decree finding for proponents and admitting the will to probate was affirmed by this Court. Alden v. Lewis, 248 Miss. 663, 160 So. 2d 181 (1964). Mrs. Alden also sought to appeal from a decree of January 17, 1963, instructing the executor to pay all general legacies except that of Mrs. Alden, who had not filed an acceptance. That interlocutory appeal was dismissed. 248 Miss. at 671, 160 So. 2d at 183.

In order to understand the trust created by Miss Skipwith's will, it is necessary to review earlier events leading to the creation of the Mary Buie Museum in Oxford. The land in question, upon which the Museum is situated, is a small lot included in five-acre lot 57 of the City of Oxford. It was devised by Miss Skipwith's brother John to her in 1915, along with a considerable amount of other property and securities. At the time of the death of Miss Skipworth's sister, Mrs. M. C. Buie, Miss Skipwith owned the land.

Mrs. Buie died in 1937, leaving a will which she executed in 1936. The validity of this will is not in issue, but its terms are relevant to an understanding of the Skipwith trust. Mrs. Buie's will made certain bequests, and stated

. . . the income from any and every source to me, I give to My sister Kate for her to spend in helping the sick both black and white — of course, if Kate

needs any of this for her living expenses, she is to use it.

Before her death, I want her to plan a strong brick room on lot east, called pasture now to be given to Oxford as a beginning for a museum — Anything of mine of any value to be put there. Would suggest Will Lewis and David Neilson to attend to and look into this. As the stocks and bonds I leave and all interest in Ark. are to be put in this museum after Kate is done with it all.

Miss Kate Skipwith, administratrix of Mrs. Buie's estate, filed a petition for construction of the will, and made defendants the heirs at law of Mrs. Buie, including Miss Mary Adair Skipwith, who is now Mrs. Alden, and who was a small legatee. She executed a waiver of service of process and consent to hearing in vacation on the petition for construction. On April 1, 1938, the chancellor entered a decree construing Mrs. Buie's will, summarized in this way:

The dominant purpose was to create and establish a museum for the City of Oxford. The terms were too indefinite to constitute a trust, but were merely precatory words, and there were no restrictions upon the right of Miss Skipwith to use the property during her lifetime as she may see fit. She had a life interest with unlimited power to use the property, but the City of Oxford took a remainder interest in any property which would be left after Miss Skipwith's death. The devise of real estate to the city was valid, not violative of the mortmain statutes and state constitution, and the gifts came within the municipal powers of the City of Oxford "for educational purposes and for general welfare." The chancellor held that Miss Skipwith was required to plan the museum before her death, "but is not required to have it constructed before her death." However, it was incumbent upon her to execute to the city a deed conveying to it all of her interest in the pasture lot east of her

then residence, being "lot east, called pasture now," since Miss Skipwith had elected to take under the will. There was no appeal from this decree, rendered twenty-six years ago.

After the death of her sister and the 1938 decree construing Mrs. Buie's will, Miss Skipwith proceeded to have the Mary Buie Museum building constructed upon "lot east, called pasture now." On August 24, 1939, she executed, individually and as administratrix with will annexed, a deed to the City of Oxford. A significant fact about this deed is that the title to "lot east, called pasture now" was conveyed to the city by Miss Skipwith individually, since she had been owning this property since she received it in 1915 through her brother's will. The lot upon which the Museum was situated did not come through the estate of Mrs. Buie. This deed recited the provisions of the Buie will; that she desired to execute a deed to the city to construct a museum; that other bequests and devises in Mrs. Buie's will came within the municipal powers, for "educational purposes and general welfare"; and that the grantor desired to convey the lot, "together with a museum erected thereon." Hence the granting clause conveyed to the city the described property (as well as other properties), "together with the improvements thereon, and being the lot upon which the said museum is located. . . this museum being known as the Mary C. Buie Museum." The last sentence of the deed stated: "The conveyance of the pasture lot above referred to is made with the understanding that its use by the said City of Oxford is subject to the provisions of the will of Mrs. M. C. Buie, deceased, above referred to.

In short, it is manifest that this 1939 deed from Miss Skipwith to the City of Oxford conveyed her fee title to "lot east, called pasture now," upon which the Museum was then situated; and that it was made in trust to Oxford for the benefit of the citizens and the general

public. On the same date, the Museum was opened to the public. To this date it has continued to be operated by the city as the Mary C. Buie Museum.

About a year and a half before Miss Skipwith's deed to Oxford, the Mississippi Leglislature enacted Chapter 592, Local and Private Laws of 1938. Miss. Local & Private Laws 1938, Ch. 592 (S.B. 279, effective Feb. 21, 1938). This statute (quoted on a footnote [1]) authorized the City of Oxford (1) to acquire and hold property devised under the will of Mrs. Buie for "an art museum," and (2) to have the museum constructed and maintained. It was constructed before the city received it.

The Museum land did not come to Oxford directly through the will of Mrs. Buie. Miss Skipwith owned and deeded it directly. However, in an indirect sense the Museum property was affected by Mrs. Buie's will, since the chancery court construed it to mean that in order for Miss Skipwith to take under her sister's will, she was obligated to convey to Oxford the Museum site. Nevertheless, the fact is that Miss Skipwith owned this property and conveyed it individually, not as administratrix.

The Mary C. Buie Museum continued to be operated by the City of Oxford from its dedication in 1939 until the death of Miss Skipwith in 1961 and thereafter. Her will consisted of 25 items and a codicil. Items 22 and 23 involved the trust in issue. Item 22 stated:

I devise and bequeath to Phil Stone, Will Lewis and Mrs. Anna Wright Purser, as Trustees, and to their successor or successors as Trustees, that portion of my Estate left to the Mary Buie Museum in the Item next following this Item. Such bequest is to set up a trust or foundation to be known as the Adair Skipwith Memorial Foundation. The primary purpose of such Foundation shall be to enlarge the building of the Mary Buie Museum in such manner and at such time as shall be determined by majority of the Trustees of said Foundation. If the bequest to said Mary

Buie Museum shall be more than necessary for such purpose, then such bequest may be used to assist the City of Oxford, Mississippi, for the support and maintenance of said Museum. . .''

The will further provided that the Mayor of the City of Oxford (and his successors in office) was also constituted a member of the board of trustees, who should operate the project from income if feasible, but this was not mandatory. Assets of the trust should be audited once each year, and a copy of this audit should be filed in the mayor's office. Item 23 left the residue of testatrix's estate as follows: One-fourth to a named church, and ''three-fourths of said residue to the Mary Buie Museum, Oxford, Mississippi, the portion devised and bequeathed to said Mary Buie Museum to be paid and handled as set out in the next preceding Item of this Will.''

The chancery court appointed three trustees for the Adair Skipwith Memorial Foundation, including the mayor.

In 1963 Mrs. Alden filed the present action to declare void the trust in Items 22 and 23 of Miss Skipwith's will. This was consolidated, in effect, with her answer to the executor's petition for instructions and her cross-bill to declare the trust void. She charged that the Museum had no legal existence as a charitable trust, and it was void; that the City of Oxford had no power to own and operate it; that the bequest for a charitable trust violated the mortmain statutes and the rule against perpetuities; that the city was not authorized to operate the Museum or to spend any public monies to maintain it; that it was principally for heirlooms of the Skipwith family and not for any educational, cultural or beneficial value to the public, but was a private museum; and that since the city had no power to own, operate and maintain the Museum, the Skipwith trust was based upon a nonexistent facility, and thus was void. In a thorough

and studious opinion, the chancellor found an effective charitable trust.

## II.

■■■ ■ The charitable trust created by Miss Skipwith's will was valid. It was instituted by a legitimate method, a transfer by will by the owner of the property to other persons as trustees to hold it upon a charitable trust. The settlor properly manifested an intention to create it, and she had the capacity to do so. The trustees accepted the trust and were properly constituted. The property was of such a nature as to be the subject of a trust. Beneficiaries of the trust or the class are large enough to make its enforcement of sufficient benefit to the community, so that it will be charitable in nature. 1 Restatement (Second), Trusts §§ 348-351, 354, 358, 375 (1959).

■■■ ■ Moreover, the trust was for a valid charitable purpose. The will gave three-fourths of the residuary estate to trustees for the Mary Buie Museum. Under Item 22, the "primary purpose . . . (was) to enlarge the building of the Mary Buie Museum," and if the gift was in an amount more than necessary for that object, then it could be "used to assist the City of Oxford, Mississippi, for the support and maintenance of the said Museum." In 1957, when the will was written, and in 1961, when Miss Skipwith died, the Museum was a readily identifiable facility of educational value to the public generally.

Appellant charged in her bill but offered no evidence to show that the Museum was not of public interest and did not provide any cultural or beneficial interest. Numerous witnesses supported the conclusion that it was of considerable educational and cultural value. The director testified that in 1939 through 1962 there had been 99,003 visitors to the Museum. It had a regular program with changing exhibits each month or so. Persons of all ages

and stations in life, including those from about forty foreign countries, had visited the place. It used numerous exhibits, both permanent and temporary.

The Museum is situated about two blocks from the campus of the University of Mississippi. A professor of history at the University testified about the historic value of original letters of the period of the Revolutionary War, including original letters from John Hancock, George Washington, and others. The Chancellor of the University described the educational value of the Museum, as did the Chairman of the Department of Arts at the University. Miss Clyde Lindsey, a friend of Miss Skipwith, who had lived in the same house with her from 1919 to 1953, told about the opening of the Museum, her preparation of accession cards showing the contents and other facts about the exhibits.

Thus it is undisputed that this Museum was for valid charitable purposes, and particularly for the advancement of education. Trusts to establish or maintain public libraries, art museums, or botanical or zoological or similar institutions, are charitable. There is another class for miscellaneous purposes which cannot be defined under a single heading, but the common element is that the purposes are of a character sufficiently beneficial to the community to justify permitting property to be devoted for an indefinite time to their accomplishment. These purposes include the advancement of education. 4 Scott, Trusts §§ 370, 374 (1956).

The common element of all charitable trusts is that they are designed to accomplish objects which are beneficial to the community. Legitimate methods of advancing education include trusts to establish or maintain public libraries, art museums or other museums. 2 Restatement (Second), Trusts §§ 368, 370, 374 (1965); Bogert, Trusts and Trustees § 375 (2d ed. 1964). And in each case the question is "whether at the time when the question arises and in the state in which it

arises the purpose is one the accomplishment of which might reasonably be held to be for the social interest of the community.'' Id., § 374 at 257; 15 Am. Jur. *Charities* § 75 (1964); Annot., 12 A.L.R. 2d 849 (1950).

■■ It is also significant that charities are generally favored and will be enforced, if there is some pivotal point of definiteness by which or through which they may be administered. The Mississippi rules governing charities are derived from the unwritten law of England prior to the statute of Elizabeth and from the statute of Elizabeth itself. See National Bank of Greece v. Savarika, 167 Miss. 571, 148 So. 649 (1933); Statute of Charitable Uses, 1601, 43 Eliz. 1, c. 4; Bogert, Trusts and Trustees § 368 (2d ed. 1964).

With these criteria in mind, it is inescapable that this trust, standing alone, is charitable and valid.

### III.

The trust created in Miss Skipwith's will was for the purposes of providing an addition to the Mary C. Buie Museum, and if sufficient additional funds were available, to assist the City of Oxford in operating and maintaining it. Appellant argues that the city had no power to receive, operate and maintain the real property and the Museum building situated upon it, and therefore the Skipwith testamentary trust was for the illegal purpose of adding to and maintaining a Museum unlawfully owned by the municipality. Hence it is asserted the basic purpose of the Skipwith trust is invalid, and its funds should be inhereited by appellant.

■■ There is no merit in this contention, for two reasons: (1) The city had the power under general statutes to receive title to the Museum, in trust for the citizens, and to operate and maintain it from its general revenues; and (2) Chapter 592, Mississippi Local and Private Laws of 1938, was valid, and authorized the city to receive the Museum and maintain it for an art museum from appropriate municipal revenue funds.

Among the other municipal powers of the City of Oxford, a code charter municipality, are those to purchase and hold real estate

. . . for all proper municipal purposes, including parks, . . . schoolhouses, . . . and other proper municipal purposes; . . . to sell and convey any real and personal property owned by it, and make such order respecting the same as may be deemed conducive to the best interest of the municipality, and exercise jurisdiction over the same; to make all contracts and do all other acts in relation to the property and affairs of the municipality necessary to the exercise of its governmental, corporate and administrative powers; and to exercise such other or further powers as are otherwise conferred by law. Miss. Code Ann. § 3374-112 (1964 Supp.).

Section 3374-114 states:

The governing authorities of every municipality of this state shall have the care, management and control of the municipal affairs and its property and finances, and shall have the power to enact ordinances for the purposes provided by law, where same are not repugnant to the laws of the state, and shall likewise have the power to alter, modify and repeal such ordinances.

Section 3374-125 provides:

The governing authorities of municipalities shall have the power to appropriate the funds thereof for the current expenses of the municipality in the manner provided by law.

Municipalities have been expressly granted the power to maintain libraries for public use, to appropriate stated funds for supporting and maintaining a band or concert orchestra for the amusement and entertainment of citizens of municipalities, and to support and maintain parks and playgrounds. Miss. Code Ann. §§ 3374-147, 3374-155, 3374-158, et seq. (1956).

Moreover, as previously stated, Miss Skipwith conveyed *inter vivos* the property to the City of Oxford by her deed of August 24, 1939. This was expressly authorized by the provisions of a 1922 statute authorizing persons to convey to a trustee real property to promote the public welfare by founding and maintaining "a public library, museum, art gallery or educational institutions within this State. . ." Miss. Code Ann. §§ 6193-6199 (1956), being Miss. Laws 1922, Ch. 193. Such institutions are rendered competent to receive by purchase or gift of the property, within the objects and purposes of the institution, and to receive by bequest such property, if it does not violate the mortmain statutes. Id., § 6197.

This Court has utilized a broad definition of municipal purposes. Municipalities are entitled to receive conveyances of lands for public parks, for the health and entertainment of their citizens. Brahan v. City of Meridian, 111 Miss. 30, 71 So. 170 (1916); Rowzee v. Pierce, 75 Miss. 846, 23 So. 207 (1898); Lester v. City of Jackson, 69 Miss. 887, 11 So. 114 (1892) (property for park located outside of city limits). In Board of Mayor and Aldermen of Yazoo City v. Wilson, 232 Miss. 435, 99 So. 2d 674 (1958), the closing of a portion of a street south of a public park was held to be invalid, since it was a subversion of a public park dedicated to public use. It was said that "lands taken and held by a municipality under grant, will, gift, or dedication for a specific purpose are subject to the law of trusts. . . ." 232 Miss. at 441, 99 So. 2d at 677.

(Hn 6) The general rule is that a municipality is competent to administer a trust for charitable purposes, unless there are statutory prohibitions. Thus a municipal corporation can administer trusts for the relief of poverty, the advancement of education, the promotion of health, "and for other purposes the accomplishment of which is beneficial to the community." 1 Scott, Trusts § 96.4 (1956); See Blackbourn v. Tucker, 72 Miss. 735,

17 So. 737 (1895); Anderson v. Gift, 156 Miss. 736, 126 So. 656 (1930) (both cases assuming trusts for advancement of education to be charitable).

Bogert on Trusts and Trustees section 130 (2d ed. 1964) states:

Municipal corporations do have power to accept and administer trusts for purposes which are expressly or impliedly included within the grant of powers to them by the legislature. Whenever a trust is useful in aiding a municipal corporation to carry on its legitimate functions in promoting the welfare of its people, the municipality may accept the trust and execute it. Many cases are to be found where such trusts have been examined and sustained. Such trusts generally fall within the groups of governmental, eleemosynary, or educational charitable trusts. See also Id., § 34; § 328 at 721.

In short, it is generally held that a municipal corporation may accept and administer a trust committed to it for a purpose germane to the objects of the corporation. These include civic buildings, educational facilities, libraries, parks, historical and art museums. Annot., 10 A.L.R. 1368 (1921); Scott, Trusts, § 96.4 (1956); 15 Am. Jur. 2d *Charities* § 75 (1964).

Hence, absent any special act, the City of Oxford as a code charter municipality had the right and power to receive as a trustee from Miss Skipwith by the 1939 deed the Museum and the property upon which it was situated, and to maintain and operate it from appropriate municipal revenues. The aggregate of the above statutes, and particularly the 1922 act, authorized it to do so.

Secondly, chapter 592, Local and Private Laws of Mississippi of 1938, authorized the City of Oxford (a) to acquire and hold the Buie Museum property, and (b) to construct and maintain the Museum as a trustee for public purposes, and as a charitable trust.

■■ ■ Appellant argues that, since section 90(e) of the Mississippi Constitution proscribes enactment of a local and private law ''concerning the settlement or administration of any estate,'' this prohibition applied to chapter 592. We do not think so, since the act does not pertain to the settlement or administration of an estate, except in a very indirect sense. It authorized the city to hold the museum property and to construct and maintain it for public purposes. Constitution section 89 creates a committee on local and private legislation. ■■ ■ Although the Court will not invalidate a statute by ascertaining from the journals of the legislature whether that body complied with section 89, it might be observed that chapter 592 was processed by the legislature in accordance with section 89. Haas v. Hancock County, 183 Miss. 365, 184 So. 812 (1938); Miss. Senate Journal 1938, pp. 203, 253, 261, 302, 309, 906.

### IV.

Finally, appellants argue that the Skipwith trust is invalid because the City of Oxford could not receive the Museum and lot upon which it is situated under the constitutional mortmain provisions existing prior to the 1940 amendments. Mississippi Constitution section 269, before its repeal by the Mississippi Laws 1940, chapter 325, provided that every devise or bequest of lands or interests therein to any religious organization ''or to any person or body politic, in trust, . . . for the use and benefit of such . . . association, or for the purpose of being given or appropriated to charitable uses or purposes, shall be null and void. . .''

■■■ This constitutional prohibition was of testamentary devises and bequests of land to a body politic in trust. It did not apply to *inter vivos* conveyances of land to a body politic. The city did not receive the Museum property by a prohibited testamentary devise or bequest. Miss Skipwith owned the fee simple title to this

land, having received it under her brother's will in 1915. Hence her deed to the city of August 24, 1939, executed individually and also as administratrix of Mrs. Buie's estate, operated to convey her exclusively individual fee title to the city. Thus the conveyance was not proscribed by the mortmain section.

In its 1938 decree construing Mrs. Buie's will, the chancery court properly found that the terms of her will were too indefinite to constitute a trust, and Miss Skipwith had an unrestricted power to use the property. Without the will she owned the lot. She constructed the Museum building on it, and then conveyed it to the city. The precatory words in her sister's will do not diminish the fact that Miss Skipwith owned the land and conveyed it during her lifetime to the city in trust. Hence there was no proscribed mortmain devise involved. For that reason, we do not need to consider whether the decree construing the will of Mrs. Buie is res judicata as to appellant.

Affirmed.

*Rodgers, Brady, Smith and Robertson, JJ.,* concur.

FOOTNOTE 1

Chapter 592

Senate Bill No. 279

AN ACT authorizing and empowering the city of Oxford, Mississippi, to acquire by devise and hold property willed by Mrs. M. C. Buie, deceased.

SECTION 1. BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF MISSISSIPPI: That the city of Oxford, Mississippi, be, and is, hereby authorized and empowered to acquire and hold certain property devised under the will of the late Mrs. M. C. Buie for an art museum.

Sec. 2. That the said city be, and is, hereby authorized and empowered to have said museum constructed and maintained and for such purpose is hereby authorized and empowered to select as trustees for such purpose any three residents who are freeholders of said city of Oxford who, upon appointment and qualification, shall enter into bond with any surety company authorized to do business in the state of Mississippi as surety and in such

penalty as may be provided by the order of the board of mayor and aldermen of said city of Oxford, said bond to be for the proper performance of their duties as such trustees and to be payable to the said city of Oxford.

Sec. 3. That said trustees serve without pay or remuneration, and that the city of Oxford pay the premium on said bond out of the general funds of said city.

Sec. 4. In addition to the powers hereinabove specifically set out, the said city of Oxford shall have, with reference to said devise above set out, all powers conferred upon a municipality by section 2391 of the Mississippi code of 1930.

Sec. 5. This act shall be in force and effect upon its passage.

APPROVED February 21, 1938.